[No. S148536. Aug. 4, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS GREGORIO SEGURA, Defendant and Appellant.

924

COUNSEL

Esperanza V. Bada, under appointment by the Supreme Court, and Mark P. LaScola for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Pamela C. Hamanka, Assistant Attorney General, Victoria B. Wilson, Kristofer Jorstad and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GEORGE, C. J.—Defendant Luis Gregorio Segura was charged with the commission of a felony and was alleged to have suffered a prior felony conviction, with both the prior and the current offenses qualifying as "strikes" within the meaning of the "Three Strikes" law. He negotiated with the prosecutor a plea of no contest to the present charge in exchange for which the prior conviction allegation was to be dismissed and he was to be placed on probation on the condition, among others, that he serve 365 days in county jail. Prior to entering his plea, defendant waived his constitutional rights and acknowledged that if he was not a citizen of the United States, the one-year jail term would qualify the offense as an "aggravated felony" under federal law and require his deportation.

When the federal authorities initiated deportation proceedings after defendant was released from jail, he applied to the trial court to "reduce" his jail term to 360 days, effective nunc pro tunc. The trial court denied defendant's request on the ground the court was not authorized to modify a sentence prescribed pursuant to the parties' plea agreement. On appeal, the reviewing court reversed, concluding the trial court possessed continuing jurisdiction during the period of probation and the authority to modify or revoke probation, including a change in the agreed-upon term of confinement that was imposed as a condition of probation.

We granted review to determine whether a prescribed jail term that constitutes a material provision of a plea agreement conferring, as its chief benefit, a grant of probation in lieu of a prison sentence, may be modified by the trial court in the exercise of its authority to modify or revoke probation during the probationary period. As we shall explain, in this matter defendant was granted probation, for which he otherwise was ineligible in view of the prior conviction allegation, in exchange for entering into a plea agreement comprised of various terms, including confinement in the county jail for a specified number of days. He knowingly and voluntarily accepted those terms of the agreement. The trial court's statutory authority to modify conditions of probation in the exercise of its jurisdiction over a probationer did not extend to modifying a material term of a plea agreement that bestowed the privilege of probation subject to defendant's service of a specified jail term. Accordingly, we reverse the judgment rendered by the Court of Appeal.[1]

---

[1] The Attorney General informs us that defendant already has been deported. Thus, the issue may have become moot with regard to defendant (absent its relevance in future immigration and naturalization proceedings), and the case may be subject to dismissal. (See *People v. Cheek* (2001) 25 Cal.4th 894, 898 [108 Cal.Rptr.2d 181, 24 P.3d 1204]; *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198].) Nonetheless, the question raised is a matter of public interest and is likely to recur in other cases at a time prior

## I

An information was filed in August 2005 alleging that on May 29, 2005, defendant inflicted corporal injury upon his spouse (punishable by a term of two, three, or four years in state prison), a serious or violent felony within the meaning of the Three Strikes law (Pen. Code §§ 273.5, subd. (a), 1170.12, subds. (a)–(d)),[2] and that in 1990 defendant suffered a prior conviction of felony battery, also a serious or violent felony (§§ 246.3, 1170.12, subds. (a)–(d)). Defendant additionally had suffered a 1997 felony conviction of possessing or discharging a loaded firearm. Ordinarily, a defendant who has suffered two prior felony convictions is ineligible for probation. (§ 1203, subd. (e)(4).)

On September 14, 2005, the parties entered into a plea agreement pursuant to which defendant agreed to plead no contest to the charge he inflicted corporal injury upon his spouse. The prosecutor agreed that the prior conviction allegation would be dismissed, that defendant's present conviction would not be utilized as a "strike" conviction in a future case, and that defendant would be placed on five years' probation, subject to the condition he serve the first 365 days in county jail. Defendant executed the printed form recording the parties' plea agreement, placing his initials in appropriate boxes indicating he understood and agreed to waive his constitutional rights related to trial, and understood that if he was not a citizen of the United States, he "must expect" that his plea of no contest would result in deportation, exclusion from admission to the United States, and denial of citizenship or naturalization.

At the hearing held on that date, and prior to defendant's entry of his plea, the prosecutor reviewed and obtained defendant's waiver of his trial-related constitutional rights, and also explained the collateral consequences of defendant's plea. During the latter review, the prosecutor advised defendant: "Sir, if you're not a citizen of the United States, this plea will have the consequences of deportation, exclusion from admission and denial of naturalization." After explaining an additional consequence of the plea applicable if

---

to a defendant's deportation when the opportunity for review may be limited. (*Thompson v. Department of Corrections, supra,* at p. 122; *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1218–1219 [26 Cal.Rptr.2d 623, 865 P.2d 56]; *In re William M.* (1970) 3 Cal.3d 16, 23–25 [89 Cal.Rptr. 33, 473 P.2d 737].) Moreover, the parties dispute whether the Court of Appeal's decision is consistent with, or distinguishable from, the decision in *People v. Borja* (2002) 95 Cal.App.4th 481 [115 Cal.Rptr.2d 728] (*Borja*). (See also *People v. Paredes* (2008) 160 Cal.App.4th 496, 511–512 [72 Cal.Rptr.3d 867].) Accordingly, for the guidance of courts in future cases presenting similar issues, we have exercised our inherent authority to retain the case for argument and the rendering of an opinion. (See *People v. Cheek, supra,* at pp. 897–898; *People v. Mancheno* (1982) 32 Cal.3d 855, 859, fn. 1 [187 Cal.Rptr. 441, 654 P.2d 211].)

[2] All further statutory references are to the Penal Code unless otherwise indicated.

defendant was then on probation or parole in another matter, the prosecutor stated: "Do you understand the possible consequences of your plea?" Defendant, who is not a citizen of the United States, responded "Yes."

Having found that defendant freely, knowingly, and voluntarily had waived his constitutional rights and entered his plea, the trial court accepted defendant's plea, dismissed the prior conviction allegation, and placed defendant on probation subject to the terms of the plea agreement, which specified that defendant serve 365 days in county jail. The court imposed various other conditions, including that defendant not contact the victim and that he participate in domestic violence counseling.

When released from jail, defendant promptly was detained by federal immigration authorities. On January 6, 2006, defendant's attorney filed in the superior court an "ex parte motion to reduce sentence" seeking an "emergency" nunc pro tunc order or a writ of error *coram nobis* to modify defendant's probationary jail term to 360 days.[3] The motion was based upon the following information. The United States Department of Homeland Security (which encompasses the former United States Immigration and Naturalization Service) had commenced deportation proceedings against defendant pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (8 U.S.C. § 1227(a)(2)(A)(iii)) because he had been convicted of an "aggravated felony," defined as a "crime of violence . . . for which the term of imprisonment [is] at least one year." (Immig. & Nat. Act, § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).) That agency had set a hearing on his deportation for January 13, 2006. Defendant had been a "lawful permanent legal resident" of the United States for more than 15 years, owned a residence, and was the sole means of support for his wife and three children. Notice of the pending action of the federal authorities had been provided to the deputy district attorney who had participated in the plea agreement.

At the January 6 hearing on defendant's motion, the prosecutor argued that the one-year sentence was a term of the plea agreement, that defendant had

---

[3] In the superior court and the Court of Appeal, defense counsel indicated that defendant completed his one-year jail term prior to filing this motion early in 2006. The offense occurred on May 29, 2005, and defendant was arrested on July 27, 2005. The parties' plea agreement dated September 14, 2005 notes: "[One] year county jail; credit time served; [five] year probation . . . ." Both the hearing record and the minute orders for that date reflect that defendant received credit for time served of 75 days, comprised of 50 days actually served and 25 days for good conduct. Even taking into account the credit defendant received for time served, it is evident he gained early release from jail, and his answer brief confirms that he served less than four months of the one-year term. Neither the briefing nor the record provides an explanation of the circumstances leading to his early release. Nonetheless, the People do not object or refer to this circumstance, and it does not appear to have any bearing on the legal issues before us.

obtained "a good deal," that the prosecutor had agreed to dismiss defendant's 1990 prior strike conviction as remote, but that since 1990 defendant had been convicted of a number of misdemeanor offenses and had been identified as being involved in gang activity. The superior court denied defendant's motion, finding that the 365-day sentence was an integral part of the parties' plea agreement and as such was not subject to subsequent modification by the court. Defendant appealed.[4]

The Court of Appeal reversed, agreeing with the argument, newly advanced by defendant, that section 1203.3 authorized the trial court to modify, by means of an order entered nunc pro tunc, any imposed condition of probation—including the negotiated requirement that defendant serve one year in the county jail—without obtaining the prior approval of both parties. The appellate court remanded the case, reasoning the trial court failed to recognize that the plea agreement did not preclude it from exercising its discretion to reduce the jail term during the period of probation. We granted the People's petition for review.

---

[4] In his opening brief filed in the Court of Appeal, defendant provided a "statement of appealability" asserting that the trial court's order denying his motion was appealable as an order made after judgment affecting his substantial rights. (§ 1237, subd. (b).) Defendant stated that by failing to avert his imminent deportation, the trial court's order denying reduction of his jail sentence affected defendant's right to remain in this country with his family as a "lawful permanent resident." Neither the respondent's brief filed by the Attorney General nor the decision of the Court of Appeal commented upon the appealability of the trial court's order.

We requested that the parties provide supplemental briefing regarding the appealability of the order. Defendant reiterates that the order is appealable as an order made after judgment affecting his substantial rights. (§ 1237, subd. (b); *People v. Romero* (1991) 235 Cal.App.3d 1423, 1425–1426 [1 Cal.Rptr.2d 468] [holding that an order denying the defendant's motion seeking early termination of probation and release from penalties is appealable].) The Attorney General, on the other hand, asserts that the order is not appealable, because the appeal would bypass or duplicate an appeal taken from the judgment itself (*People v. Thomas* (1959) 52 Cal.2d 521, 527 [342 P.2d 889]; *People v. Gallardo* (2000) 77 Cal.App.4th 971, 980–981 [92 Cal.Rptr.2d 161] (*Gallardo*)), and is not appealable as an order denying a petition for writ of *coram nobis*, because the purported petition for writ of *coram nobis* does not state a prima facie case for relief based upon newly discovered evidence. (*People v. Totari* (2002) 28 Cal.4th 876, 885, fn. 4 [123 Cal.Rptr.2d 76, 50 P.3d 781]; *Gallardo, supra,* at p. 982.)

Nonetheless, the Attorney General requests that we treat the purported appeal as a petition for writ of habeas corpus and, in the interest of judicial economy and because the issue is a matter of concern to many persons other than defendant, decide the case on its merits. (See generally *People v. Banks* (1959) 53 Cal.2d 370, 379–381 & fn. 5 [1 Cal.Rptr. 669, 348 P.2d 102].) The Attorney General points out that a probationer in constructive custody may petition for a writ of habeas corpus (*In re Stier* (2007) 152 Cal.App.4th 63, 82 [61 Cal.Rptr.3d 181]), and in analogous circumstances appeals have been so treated. (*Gallardo, supra,* 77 Cal.App.4th at p. 986.) We do so here in the interest of judicial economy and because the issue is of general concern.

## II

The People contend the trial court correctly determined that the plea agreement, requiring defendant as a condition of his probation to serve one year in county jail, precluded the court from subsequently reducing the prescribed term of incarceration in order to avert defendant's deportation.[5] The People urge that when a trial court has accepted the terms of a negotiated plea, determined the defendant has validly waived his or her constitutional rights, and entered and imposed sentence, the court lacks statutory or inherent authority thereafter to "unilaterally alter a material term of the plea agreement" to render it more favorable to the defendant. The People also suggest the Court of Appeal misconstrued the trial court's general statutory authority to modify probation conditions by interpreting that authority to permit alteration of a material term of the parties' plea agreement, failed adequately to distinguish *Borja, supra*, 95 Cal.App.4th 481, and erroneously viewed the trial court's discretionary authority to issue an order nunc pro tunc as encompassing the modification of a completed sentence.

In deciding whether the trial court was authorized in its discretion to modify the condition of defendant's probation requiring a one-year county jail term notwithstanding the parties' plea agreement that expressly incorporated that condition, we briefly consider the nature and purpose of a plea agreement. Plea negotiations and agreements are an accepted and "integral component of the criminal justice system and essential to the expeditious and fair administration of our courts." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933 [8 Cal.Rptr.2d 713, 830 P.2d 747]; *People v. Panizzon* (1996) 13 Cal.4th 68, 79–80 [51 Cal.Rptr.2d 851, 913 P.2d 1061] (*Panizzon*).) Plea agreements benefit that system by promoting speed, economy, and the finality of judgments. (*Panizzon, supra*, at p. 80; *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1658 [17 Cal.Rptr.2d 445]; see also *In re Chavez* (2003) 30 Cal.4th 643, 654, fn. 5 [134 Cal.Rptr.2d 54, 68 P.3d 347] [noting judgments based upon plea agreements "represent the vast majority of felony and misdemeanor dispositions in criminal cases," and citing statistics indicating that less than 5 percent of felony cases are disposed of through felony convictions resulting from a court or jury trial].)

■ As we previously have explained, the process of plea negotiation "contemplates an agreement negotiated by the People and the defendant and

---

[5] In requesting that the trial court reduce his jail term to avoid deportation, defendant relied upon *In re Cota-Vargas* (2005) 23 I. & N. Dec. 849. In that case, the federal Board of Immigration Appeals afforded full faith and credit to the state trial court's nunc pro tunc reduction of the defendant's probationary jail sentence from 365 days to 240 days, an order intended to prevent his deportation. (*Id.* at pp. 851–853.) As defendant recognizes, no plea agreement was at issue in that decision, which, in any event, is not controlling in this court.

approved by the court. (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People* v. *West* (1970) 3 Cal.3d 595, 604–608 [91 Cal.Rptr. 385, 477 P.2d 409].) Pursuant to this procedure the defendant agrees to plead guilty [or no contest] in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. (*People* v. *West, supra,* 3 Cal.3d at p. 604.) This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment (§ 1192.5), by the People's acceptance of a plea to a lesser offense than that charged, either in degree (§§ 1192.1, 1192.2) or kind (*People* v. *West, supra,* 3 Cal.3d at p. 608), or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information. Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution. (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People* v. *West, supra,* 3 Cal.3d at pp. 607–608.) But implicit in all of this is a process of 'bargaining' between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them. (See *People* v. *West, supra,* 3 Cal.3d at pp. 604–605.)" (*People v. Orin* (1975) 13 Cal.3d 937, 942–943 [120 Cal.Rptr. 65, 533 P.2d 193] (*Orin*); see 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, §§ 303, 304, pp. 522–525.)

■ We further clarified in *Orin* that only the prosecutor is authorized to negotiate a plea agreement on behalf of the state. "[T]he court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of 'plea bargaining' to 'agree' to a disposition of the case over prosecutorial objection. Such judicial activity would contravene express statutory provisions requiring the prosecutor's consent to the proposed disposition, would detract from the judge's ability to remain detached and neutral in evaluating the voluntariness of the plea and the fairness of the bargain to society as well as to the defendant, and would present a substantial danger of unintentional coercion of defendants who may be intimidated by the judge's participation in the matter. [Citation.]" (*Orin, supra,* 13 Cal.3d at p. 943, fn. omitted; see *People v. Turner* (2004) 34 Cal.4th 406, 417–418 [20 Cal.Rptr.3d 182, 99 P.3d 505]; *People v. Weaver* (2004) 118 Cal.App.4th 131, 148–150 [12 Cal.Rptr.3d 742]; 4 Witkin & Epstein, Cal. Criminal Law, *supra,* §§ 305, 306, pp. 525–527.)

■ Because a "negotiated plea agreement is a form of contract," it is interpreted according to general contract principles. (*People v. Shelton* (2006) 37 Cal.4th 759, 767 [37 Cal.Rptr.3d 354, 125 P.3d 290], citing Civ. Code, § 1635 et seq.) Acceptance of the agreement binds the court and the parties to the agreement. (See, e.g., *People v. Armendariz* (1993) 16 Cal.App.4th 906, 910–911 [20 Cal.Rptr.2d 311]; *People v. Woodard* (1982) 131 Cal.App.3d 107, 110 [182 Cal.Rptr. 254].) " 'When a guilty [or nolo contendere] plea is

entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement.' " (*Panizzon, supra,* 13 Cal.4th at p. 80, quoting *People v. Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861] (*Walker*); see *In re Troglin* (1975) 51 Cal.App.3d 434, 438 [124 Cal.Rptr. 234].)[6]

■ For its part, of course, the trial court may decide not to approve the terms of a plea agreement negotiated by the parties. (See *Orin, supra,* 13 Cal.3d at pp. 942–943.) If the court does not believe the agreed-upon disposition is fair, the court "need not approve a bargain reached between the prosecution and the defendant, [but] it cannot change that bargain or agreement without the consent of both parties." (*People v. Godfrey* (1978) 81 Cal.App.3d 896, 903 [147 Cal.Rptr. 9]; cf. *People v. Superior Court (Gifford)* (1997) 53 Cal.App.4th 1333, 1338–1339 [62 Cal.Rptr.2d 220] (*Gifford*) [by statute the trial court may withdraw its approval prior to sentencing, permitting withdrawal of the negotiated plea].)

■ Although a plea agreement does not divest the court of its inherent sentencing discretion, "a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] 'A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.' [Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, '[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree.' [Citation.]" (*People v. Ames* (1989) 213 Cal.App.3d 1214, 1217 [261 Cal.Rptr. 911] (*Ames*); see *People v. Tang* (1997) 54 Cal.App.4th 669, 681–682 [62 Cal.Rptr.2d 876]; *Gifford, supra,* 53 Cal.App.4th at pp. 1337–1338; *People v. Armendariz, supra,* 16 Cal.App.4th 906, 910–911; *People v. Godfrey, supra,* 81 Cal.App.3d at p. 904.)[7]

As we have seen, in the context of a negotiated plea the trial court may approve or reject the parties' agreement, but the court may not attempt to secure such a plea by stepping into the role of the prosecutor, nor may the

---

[6] A negotiated plea of guilty or no contest requires the defendant to waive his or her constitutional rights related to trial. (*Panizzon, supra,* 13 Cal.4th at p. 80.) Prior to accepting the plea, the trial court must inform the defendant of the constitutional rights being waived and the direct consequences of the plea. (*Panizzon, supra,* at p. 80; *Walker, supra,* 54 Cal.3d at p. 1022.)

[7] Section 1192.5 provides in part: "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea."

court effectively withdraw its approval by later modifying the terms of the agreement it had approved. Because the trial court's role in the plea-negotiation process is thus circumscribed, the People assert the court below lacked authority to modify the one-year jail term that had been made a condition of defendant's probation by the parties' plea agreement. The People rely upon *Gifford, supra,* 53 Cal.App.4th at pages 1337–1339 (trial court lacked authority to modify a plea agreement that included a specified prison term by substituting a probationary jail sentence; instead it was within the court's authority to withdraw its approval of the agreement before imposing sentence) and *Ames, supra,* 213 Cal.App.3d at pages 1217–1218 (trial court lacked discretion to dismiss a special circumstance allegation admitted by the defendant pursuant to the parties' plea agreement, in exchange for which the prosecutor had dismissed a second special circumstance allegation and promised not to seek the death penalty).

The Court of Appeal in the present case concluded *Gifford* and *Ames* were "distinguishable in that they involve situations in which the trial court modified or contemplated modification of a negotiated prison term." The Court of Appeal discerned in section 1203.3 the authority to modify any probationary condition, including a fixed jail term, whether probation has been granted by the court on its own initiative or negotiated by the parties and accepted by the court. Thus, we next consider the extent of the trial court's statutory authority to modify or revoke probation.

■ A trial court grants probation by suspending the imposition of a sentence or imposing a sentence and suspending its execution. (*People v. Howard* (1997) 16 Cal.4th 1081, 1092–1093 [68 Cal.Rptr.2d 870, 946 P.2d 828].) During the period of probation, the court may revoke, modify, or change its order suspending imposition or execution of the sentence, as warranted by the defendant's conduct. (§§ 1203.2, 1203.3.)[8]

In holding that section 1203.3 authorized the trial court to modify its order granting defendant probation conditioned upon his serving a one-year jail term, despite the inclusion of that condition in the plea agreement, the Court

[8] Section 1203.3 provides in relevant part: "(a) The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held. [¶] (b) The exercise of the court's authority in subdivision (a) to revoke, modify, change, or terminate probation is subject to the following: [¶] (1) Before any sentence or term or condition of probation is modified, a hearing shall be held in open court before the judge. The prosecuting attorney shall be given a two-day written notice and an opportunity to be heard on the matter . . . . [¶] (A) If the sentence or term or condition of probation is modified pursuant to this section, the judge shall state the reasons for that modification on the record."

of Appeal in this case relied upon *People v. Allen* (1975) 46 Cal.App.3d 583 [120 Cal.Rptr. 127] (*Allen*), in which the same Court of Appeal division held that a plea agreement encompassing probation with conditions implicitly includes "the possibility that probation may later be modified, revoked, or terminated, in accordance with section 1203.3."[9] (*Allen, supra*, at p. 589.) We undertake a review of *Allen* in some detail.

In *Allen*, the parties' plea agreement provided that on *each* of three counts, the defendant would be placed on probation, subject to a one-year consecutive probationary jail term. In view of the defendant's exemplary conduct as a prisoner during the first one-year term, a hearing was held to consider his request to modify the terms of probation (§ 1203.3), and the trial court reduced one of the three one-year jail terms to nine months. The People appealed. In upholding the trial court, the Court of Appeal initially emphasized the rehabilitative purpose of probation and the breadth of the statutory language that conferred upon the trial court the authority " '*at any time* during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence,' " and " '*at any time when the ends of justice will be subserved thereby*' " to terminate the period of probation and discharge the probationer. (*Allen, supra*, 46 Cal.App.3d at pp. 588–589, italics added in *Allen*.)

The decision in *Allen* concluded that in view of the importance of the trial court's authority to modify probation, "no plea bargain can be construed as calling for the abdication of that power without express language making it a condition of the prosecutor's approval and permitting the prosecution to require the entire bargain be withdrawn in the event the court should decline to accept such limitation." (*Allen, supra*, 46 Cal.App.3d at p. 589.) Because the record did not suggest the trial court was asked to "surrender its inherent power subsequently to modify probation if conditions warranted," the reviewing court held that the trial court "complied with the statutory requirement

---

[9] The Court of Appeal in the present case also distinguished *Borja, supra*, 95 Cal.App.4th 481, in which the appellate court set aside the trial court's nunc pro tunc order reducing, by one day, the defendant's 365-day probationary jail term, several years after the completion of probation, to forestall the mandatory-deportation consequences of postconviction changes in immigration law. In *Borja*, the Court of Appeal held that the trial court could not modify nunc pro tunc a disposition correct when made, that changes in federal law did not provide a valid ground upon which to alter the record of conviction and sentence, and that the modification violated the intent of state and federal laws to make prior convictions available for future use, including consideration in immigration proceedings. (*Id.* at pp. 486–487.) In the present case, the appellate court held that the trial court was statutorily authorized to modify the terms of probation at the time defendant sought modification of his sentence, and that a nunc pro tunc order was appropriate to achieve that end. Because we hold that the trial court was not authorized by section 1203.3 to modify the jail term that was included within the terms of the negotiated plea agreement, and correctly denied defendant's motion, we need not engage in any further analysis of *Borja*.

that, having approved the plea, it 'may not proceed as to such plea other than as specified in the plea.' (Pen. Code, § 1192.5.) Defendant received probation under the precise conditions 'specified in the plea,' and to the extent that the analogy of a plea bargain to a contract with the court is apt, the court fulfilled its responsibilities." (*Allen*, at p. 590.)

*Allen* also reasoned that "[a] court is prohibited from giving a defendant a sentence more severe than that bargained for (Pen. Code, § 1192.5; *People* v. *West*, *supra*, 3 Cal.3d at pp. 607–608); on the other hand, having granted probation, the court can immediately revoke it on any ground stated in Penal Code section 1203.2, subdivision (a). [Citation.] If defendant violated probation, he could be sentenced accordingly [citations] notwithstanding the terms of any plea bargain. Thus despite *West*, post-judgment modification of probation can make the ultimate disposition of the case more onerous to defendant than originally bargained for. [¶] So despite the fact that the defendant, by a plea bargain, can 'specify the exercise of the court's power to grant probation or suspend sentence' (*People* v. *West*, *supra*, 3 Cal.3d at p. 607), the court's power to make adverse post-judgment adjustments is unaffected. Conversely, if the prosecutor can bargain for minimum conditions of probation, the court may also make post-judgment adjustments favoring the probationer." (*Allen*, *supra*, 46 Cal.App.3d at p. 590, fn. omitted.)

■ It is evident the court in *Allen* conflated the trial court's asserted authority to modify probation conditions that have been imposed pursuant to the stipulation of the parties and accepted by the court, with the court's actual authority to *revoke* probation based upon the defendant's subsequent violation of one or more conditions of probation. In the latter situation, it is well established that when "a defendant granted probation as part of a plea bargain *violates that probation*, subsequent sentencing is not limited by the terms of the original plea." (*People v. Martin* (1992) 3 Cal.App.4th 482, 487 [4 Cal.Rptr.2d 548], italics added, citing *People v. Bookasta* (1982) 136 Cal.App.3d 296, 299–300 [186 Cal.Rptr. 193], *People v. Jones* (1982) 128 Cal.App.3d 253, 262 [180 Cal.Rptr. 228], *Allen*, *supra*, 46 Cal.App.3d at p. 590, and *People v. Turner* (1975) 44 Cal.App.3d 753, 757 [118 Cal.Rptr. 924].) ■ " 'A consummated plea bargain is not a perpetual license to a defendant to violate his probation. The plea bargain does not insulate a defendant from the consequences of his future misconduct. "A defendant gets the benefit of his bargain only once. Like time, a plea bargain once spent is gone forever." ' " (*People v. Martin*, *supra*, 3 Cal.App.4th at p. 487.)

Finally, the court in *Allen* emphasized that the trial court's authority to modify the probationary jail term is a function of its "exclusive exercise of judicial power" with regard to a probationer's status after judgment has been imposed. (*Allen*, *supra*, 46 Cal.App.3d at p. 591.) Noting that "the decision to

grant probation is a judicial act [citation], the exercise of which 'cannot constitutionally be subordinated to a veto of the prosecutor,' " the court in *Allen* cited our cases invalidating, "as violative of the constitutional separation of powers," statutes prohibiting the court (except with the prosecutor's consent) from striking prior-conviction allegations, trying certain charges as misdemeanors, or finding certain persons eligible for narcotics treatment. (*Ibid.*) The court observed, "A judge cannot be required to bargain for retention of his [or her] independent judicial power. [Citations.]" (*Ibid.*)

■ The circumstance that a plea agreement stipulates the defendant will be granted probation conditioned upon a specified term of incarceration does not deprive the trial court of all of its authority in matters of probation. ■ We recognized in *Walker, supra,* 54 Cal.3d at page 1024, in considering a deviation from the terms of a plea agreement that assertedly violated the defendant's due process rights, that when probation is granted in the context of a plea agreement, "[a] punishment or related condition that is insignificant relative to the whole, such as a standard condition of probation, may be imposed whether or not it was part of the express negotiations." (*Id.* at p. 1024.)

■ But when, as in the present case, the parties negotiate a plea agreement that, among other express provisions, grants probation incorporating and conditioned upon the service of a specified jail term, the resulting term of incarceration is not—and may not be treated as—a mere standard condition of probation. Rather, the term of incarceration is in the nature of a condition precedent to, and constitutes a material term of, the parties' agreement.[10] As such, the jail term is not subject to subsequent modification without the consent of *both* parties, and cannot be altered solely on the basis of the trial court's general statutory authority to modify probation during the probationary period. It follows that in the present case, the trial court correctly determined that under the circumstances it lacked authority to grant defendant's request to modify his probationary jail term, and the appellate court erred in concluding otherwise. To the extent it is inconsistent with our decision in the present case, we disapprove *People v. Allen, supra,* 46 Cal.App.3d 583.[11]

[10] We need not determine as a general matter what constitutes a material term of a plea agreement, because the one-year term in the present case clearly was a material term.

[11] The People further contend the trial court could not, by means of an order made nunc pro tunc, "rewrite history" to modify the jail term originally included in the judgment, even assuming the court possessed statutory authority to modify a probationary jail term set forth in a plea agreement. Because we have concluded that the trial court was not authorized by section 1203.3 to modify the probationary jail term expressly made part of the parties' plea agreement and accepted by the court, we need not, and therefore do not, decide this issue.

As we have discussed, following entry of the judgment, the trial court retained its authority pursuant to section 1203.3 to revoke, modify, or change probation or modify conditions that were not made a part of the parties' plea agreement. Nonetheless, as the trial court recognized, it was not at liberty to modify a condition integral to the granting of probation in the first place—a negotiated condition included within the plea agreement entered into by the parties, accepted by the court, and incorporated into the judgment.

## III

The judgment of the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.