Filed 8/12/16  P. v. Avila CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068910 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN338285-2) |
| SUSAN AVILA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Popkins, Judge.  Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

Defendant Susan Avila appeals from a judgment of conviction entered after she pled guilty to three offenses and admitted having suffered one prison prior. Avila contends that the trial court erred in imposing a term of four years in local custody, when her plea agreement with the prosecutor was for a four year split sentence, with three years to be spent in local custody and one year on mandatory supervision. In making this argument, Avila fails to acknowledge that the court imposed this sentence only after *Avila requested it*, and the prosecutor agreed to it. Avila's request and the prosecutor's agreement to this new term resulted in a modification of the plea agreement, and the trial court's sentence merely effectuated the modified agreement. We therefore affirm the judgment of the trial court.

II.

RELEVANT BACKGROUND[1]

In October 2014, Avila was charged with five counts of unlawfully obtaining and using personal identifying information of another person (Pen. Code,[2] § 530.5, subd. (a); counts 1-5); four counts of burglary (§ 459; counts 6, 8, 10, 12); four counts of grand theft (§ 484; counts 7, 9, 11, 13); and one count of obtaining personal identifying information with the intent to defraud (§ 530.5, subd. (c)(1); count 14). The felony

---

[1]    Because the issues raised by Avila in her appeal are unrelated to the facts underlying her convictions, we do not present facts related to her offenses.

[2]    Further statutory references are to the Penal Code unless otherwise indicated.

complaint also alleged that Avila had been previously convicted of a felony two or more times in California (§ 1203, subd. (e)(4)); that she had suffered four prison priors (§§ 667.5, subd. (b), 668); and, with respect to count 14, that she had previously been convicted of a violation of section 530.5, subdivision (a), within the meaning of section 530.5, subdivision (c)(2).

Avila entered into a plea agreement with the prosecution, and in June 2015, she pled guilty to counts 1, 3, and 8. Avila also admitted having incurred one prison prior. In exchange for her guilty plea, the People agreed to a stipulated sentence of four years in local custody, with a three-to-one-year split term—i.e., Avila would serve three years in local custody and serve the remaining one year of her term on mandatory supervision.

At the change of plea hearing, the trial court informed Avila that the maximum penalty she was facing in pleading guilty to the three counts and admitting the prison prior was a sentence of five years four months in prison, a $10,000 fine, and four years on postrelease supervision. The court accepted Avila's guilty plea, and dismissed the balance of the charges against her.

At the sentencing hearing on July 24, 2015, the trial court ordered that Avila be committed to the custody of the sheriff, pursuant to section 1170, subdivision (h)(5)(B), for a term of four years. The court further ordered that Avila "may be released after serving the three years of that sentence," and that "[t]he concluding portion is to be suspended and served in the community under the supervision of the probation [department] for a period of one year." After Avila acknowledged that she had "go[ne] over the conditions of mandatory supervision" with her attorney, and the court indicated

3

the conditions of supervision that were being imposed, Avila's attorney asked: "Your Honor? [¶] . . . [¶] . . . When would it be appropriate for her to request a transfer to L.A. County?" The following discussion then occurred:

"The Defendant: I don't live here. I live in Whittier. Both me and Joseph [Avila's son, who was arrested with her].

"The Court: Well —

"Probation Officer: Your Honor, I can tell the court when she does appear for her prerelease hearing, she should tell that court that she is going to be residing in Riverside; however, if part of her case plan is to attend a residential treatment program, which a lot of times it is the case, they will have her do that program before she's allowed to go to Los Angeles.

"The Court: Mr. Reichert [(defense counsel)], did you hear that?

"Mr. Reichert: I did. I did. And is the — [is] the Department of Probation saying she would serve her three years with all good time credits and then they refer her to —

"The Court: Mandatory supervision court. There's a prerelease hearing for that.

"Mr. Reichert: Yes, but residential rehab?

"The Court: That could be a condition of mandatory supervision. That's up to the evaluation once she's about to be released.

"Mr. Reichert: I'm sorry, Your Honor. I missed that in the terms and conditions granting mandatory supervision. I apologize. What number was that if she goes to residential —

"Probation Officer: Your Honor, if I may. What happens is once she goes back to custody, they will do a case plan on her that is taking into consideration with the probation officers as well as a treatment provider in the facility. They do determine whether or not she is in need of residential treatment. If she is in need, then at the prerelease hearing, the court will order that. And once she's done

4

with custody, they will transport her to the residential treatment program.

"The Court:  I thought Mr. Reichert wants to know what condition it is on the mandatory supervision.  I think my clerk knows.

"[¶] . . . [¶]

"The Clerk:  Oh, I'm sorry.  (A).

"The Court:  (A).

"Mr. Reichart:  All right.  Your Honor, apparently there's a little paper mishap showing that in terms of that being in our report.  I apologize for that.  [¶]  May I have one moment, Your Honor?  I believe Ms. — if there's going to be that further restriction on her freedom that wasn't bargained for, she just would ask the court she be allowed to do the four years.

"The Court:  She wants to do the four years sentence with no split?  Is that correct; Mr. Reichert?

"(Off-the-record discussion between counsel and client.)

"Mr. Reichert:  That's her request.

"The Court:  May I have the files back?  [¶]  Mr. Watanabe [(the prosecutor)], do you have any objection to that?

"Mr. Watanabe:  No, Your Honor.

"The Court:  All right.  We will resentence Ms. Avila.  The previously issued sentence that I gave is recalled and vacated.  [¶] It's ordered that Ms. Avila is committed to the custody of the sheriff pursuant to Penal Code section 1170 (h)(5)(A).  And the reasons I'm selecting the no-split term is that the defendant does not want a split term.  And as a result of that, I don't believe she'd be a suitable candidate for supervision.  [¶]  That term is the same as I indicated earlier, which would be four years, which is the upper term on count 1, one year for the prison prior and concurrent time of midterm of two years each on counts 3 and 8."

5

Just over a month later, on August 26, 2015, Avila, through her counsel, sought to reverse course, and asked the court to modify her sentence to reimpose the original split sentence. At a hearing on the matter, Avila's counsel stated, "When we were last here the recommendation and negotiation was for a 3-1 split. Ms. Avila wanted the court not to do [a] 3-1 split and just impose four years. [¶] Since that time, Your Honor, she's realized, one, she wasn't doing well on her medication regimen at the time and that she took advice from people she shouldn't have. Feels like she made a very unenlightened decision and would like to ask the court to reconsider knowing that it's certainly not a matter of right, but if the court's grace like [*sic*] to have the original deal back understanding she's not entitled to it." The court inquired as to the People's position. The prosecutor said, "Your Honor, the People believe that the sentence, as the court imposed, which is what the defendant requested, should remain. And so we are opposed to modifying the changing of her sentence. We think it should stay as she chose." The probation officer who was present at the hearing stated that the probation department did not have a recommendation and would defer to the court.

The court denied Avila's request to modify the sentence, stating:

> "You know, Mr. Reichert, I think there has to be some sense of finality to her sentence. And, you know, I took a very extensive waiver from Ms. Avila with the plea agreement and — and I'm just concerned that [if I] change it now, a month from now she'll want to change it back the other way.
>
> "I honestly think she's better off leaving it the way it is independent of my personal decision because with her going to Los Angeles, she's just better off without a tail.
>
> "So I'm going to deny your request and leave the sentence as is."

6

Avila filed a timely notice of appeal.

## III.

## DISCUSSION

Avila contends that the trial court erred in modifying the agreed upon split term sentence of four years and imposing a nonsplit sentence of four years. She contends that the trial court should not have modified the sentence agreed to in the plea agreement, despite her request that the court do so, and that this court should reverse the judgment and modify her sentence to the originally agreed upon split sentence. We conclude that Avila's request that the court impose a four-year term rather than a four-year split sentence, and the prosecutor's acceptance of the proposed new term, constituted a modification of the plea agreement, which the trial court accepted. Avila's contention that the trial court somehow erred in imposing a sentence *that she specifically requested*, after consulting with her counsel, is without merit.[3]

---

3      The People initially contend that Avila waived her arguments on appeal when she entered her plea and waived her right to appeal, and that her failure to obtain a certificate of probable cause bars review of her contention on appeal. Avila's contention is not, as the People maintain, that the trial court abused its discretion in imposing a sentence contemplated by the plea, a contention that would be waived on appeal and/or would require a certificate of probable cause to challenge (see *People v. Panizzon* (1996) 13 Cal.4th 68, 84-87 [waiver of appellate rights include waiver of right to challenge a sentence contemplated by the plea]; *People v. Johnson* (2009) 47 Cal.4th 668, 678 [certificate of probable cause required if defendant's challenge "goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement"]). Rather, Avila's contention is that the trial court exceeded its authority in unilaterally modifying the stipulated sentence. Although we conclude that Avila is incorrect on the merits, since the record demonstrates that the court did not unilaterally modify the stipulated sentence, her argument challenges whether the court failed to give effect to the terms of her plea

7

A. *Legal standards related to plea agreements*

A "negotiated plea agreement is a form of contract" and is interpreted according to general contract principles. (*People v. Shelton* (2006) 37 Cal.4th 759, 767, citing Civ. Code, § 1635 et seq.) Acceptance of the agreement binds the court and the parties to the agreement. (See *People v. Armendariz* (1993) 16 Cal.App.4th 906, 910-911; *People v. Woodard* (1982) 131 Cal.App.3d 107, 110.)

" ' "When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement." ' " (*People v. Segura* (2008) 44 Cal.4th 921, 930-931 (*Segura*).) "For its part, of course, the trial court may decide not to approve the terms of a plea agreement negotiated by the parties." (*Id.* at p. 931.) For example, if a court does not believe that "the agreed-upon disposition is fair, the court 'need not approve a bargain reached between the prosecution and the defendant, [but] it cannot change that bargain or agreement without the consent of both parties.' " (*Ibid.*)

"Although a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound."

agreement, and, as such, is cognizable on appeal. (See *People v. Brown* (2007) 147 Cal.App.4th 1213, 1220 [grounds for her appeal arising from the trial court's failure to give effect to the terms of plea agreement do not require certificate of probable cause for review].)

[Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." ' " (*Segura*, *supra*, 44 Cal.4th at p. 931.) In other words, when the trial court accepts a plea agreement, the agreement is binding on the parties and the court, and the material terms of the agreement cannot be modified *without the parties' consent*. (*Id.* at pp. 930-931, 935.)

B. *Analysis*

Avila asserts that the trial court "violated section 1192.5 because it was without authority to impose a jail custody term longer than that agreed upon in appellant's plea agreement."[4] What Avila fails to acknowledge is that *the parties* altered the terms of the plea agreement by their subsequent agreement to modify one of the terms. The trial court simply sentenced Avila pursuant to the modified agreement.

As the record reveals, *Avila* requested that the court impose a four-year term to be served entirely in local custody instead of a four-year term to be served as a split sentence, with three years in local custody and one year of mandatory supervision. The People agreed to this modification. *Segura*, *supra*, 44 Cal.4th at page 935, demonstrates

---

4 Section 1192.5 provides in relevant part: "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea."

9

that the court may not unilaterally—i.e., without the consent of the parties—alter a material term of a plea agreement. The *Segura* court considered the court's authority to modify a material term of a plea agreement after the plea had been accepted and after sentence had been imposed pursuant to the plea agreement (*id.* at p. 927-928), and thereby implicitly acknowledges that a court may impose a sentence different from the terms set forth in the original plea agreement, even after the court has already accepted the plea and sentenced the defendant, *if the sentence reflects a term agreed to by both parties*. This record demonstrates that the parties modified the plea agreement by *agreeing* to alter one of the terms of the agreement—i.e., the period of time in local custody versus on mandatory supervision— and the court sentenced Avila consistent with the parties' new agreement. (*Id.* at p. 935 [material term may not be subsequently modified by court "*without* the consent of both *parties*" (first italics added, second italics in original)].) We therefore reject Avila's contention that the trial court violated section 1192.5 in sentencing Avila to a four-year term in local custody.

Avila further contends that the trial court should not have permitted this modification of the plea agreement, notwithstanding her request, because "the trial court's acceptance of appellant's request for more jail time was contrary to public policy." Avila contends that her request to serve more jail time than originally agreed to in the plea agreement was made without consideration, and, because there is an express intent on the part of the Legislature to reduce custodial populations, it was also contrary to public policy. We reject both aspects of this argument.

First, as the discussion between Avila, her attorney, and the court demonstrates, there was adequate consideration for the modification to the plea agreement. Avila herself indicated that she did not want the court to impose a split sentence if it meant that she might be placed in a residential treatment facility far from her home upon her release from local custody and while on mandatory supervision. Avila therefore received some benefit from this modification, and thus, there was adequate consideration to support the modification to the plea agreement.

Further, the parties' modification of the original plea agreement that provided for a stipulated split sentence to an agreement pursuant to which Avila would serve the four-year term in local custody without any time on mandatory supervision does not, on its face, violate public policy. First, Avila's contention that the trial court's acceptance of Avila's requested modification to her sentence violates public policy is premised on her assertion that Avila's request for "more time in jail" was made without consideration—a premise we have rejected. Further, Avila could have negotiated with the People for a stipulated four-year full local custody term in the first instance. Thus, even if the Legislature has expressed an intent to reduce custodial population, this Legislative policy does not prohibit the parties from agreeing to the same local custody term that a defendant could have negotiated in the first instance, pursuant to an agreement to modify the original stipulated sentence.

Finally, Avila also raises an ineffective assistance of counsel claim, asserting that her counsel should have requested a continuance, rather than permit Avila to enter into a modification of the stipulated sentence terms. Avila contends that it was "not in [her]

11

interests to serve more time in jail," and, therefore, her attorney should have requested a continuance to permit her more time to consider this decision.

"The standard for showing ineffective assistance of counsel is well settled. 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation.' " (*People v. Gray* (2005) 37 Cal.4th 168, 206-207.) A strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance is warranted "because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." (*Bell v. Cone* (2002) 535 U.S. 685, 702.)

Whether to seek a continuance for a client who expresses a desire to serve the full term in local custody rather than face the possibility of having to attend a residential treatment program is a tactical decision. Avila's attorney consulted with her, and we can

infer that Avila reiterated her desire not to serve a period of mandatory supervision in San Diego County. It is possible that some individuals are aware that they may be at risk of performing poorly on supervision, and that as a result, they risk ultimately serving more custody time in the long run. Given Avila's criminal history and her expressed desire not to be placed on mandatory supervision and face the potential of being placed in residential treatment program, it would have been reasonable for her attorney to conclude that not having to serve a portion of her sentence on mandatory supervision was in her best interests. Avila cannot demonstrate on appeal that a reasonable attorney would not have proceeded in this manner under such circumstances. We therefore conclude that counsel's decision not to seek a continuance did not fall below "prevailing professional norms," and we therefore reject Avila's claim of ineffective assistance of counsel.

In sum, at the time Avila requested the modification to the agreed upon sentence, she wanted certain benefits that she could obtain only if she were sentenced to a period of local custody sentence with no mandatory supervision to follow— i.e., she would not be subjected to the possibility of being in a residential treatment facility in San Diego County. The fact that Avila changed her mind as to the value of that benefit to her after having renegotiated the sentence and the court having imposed the straight four-year sentence does not mean that the modified agreement was entered into without consideration or that it violated public policy, nor does it mean that Avila's attorney provided ineffective counsel in not requesting a continuance at the time Avila sought to modify the terms of the plea agreement.

13

IV.

DISPOSITION

The judgment of the trial court is affirmed.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

PRAGER, J.*

---

*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.