Filed 4/4/25  In re H.A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FIVE

| | |
|---|---|
| In re H.A. et al., Persons Coming Under the Juvenile Court Law. | B335055 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.A. et al., Defendants and Appellants. | (Los Angeles County Super. Ct. Nos. 23LJJP00363A-C) |

APPEALS from orders of the Superior Court of Los Angeles County, Debra L. Gonzales, Temporary Judge.  Dismissed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant Father, K.A.

Janelle B. Price and Ellen Bacon Wiley, under appointments by the Court of Appeal, for Defendant and Appellant Mother, R.A.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

Dan Szrom for Minors, C.A. and S.A.

Charles Inada for Non-Minor Dependent H.A.

K.A. (father) and R.A. (mother), are the adoptive parents of non-minor dependent Hannah A. (born in 2006), and minors C.A. (born in 2008), and S.A. (born in 2020).  Mother and father filed separate notices of appeal challenging the juvenile court's January 10, 2024 jurisdiction and disposition orders, after the juvenile court sustained petition allegations under Welfare and Institutions Code section 300, subdivisions (a), (b)(1), (c), and (j), based on physical and emotional abuse and general neglect, and ordered all three children removed from parental custody.[1]

Both parents' sole contention on appeal is that the January 10, 2024 orders incorrectly made an implicit finding of compliance with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.).  No interested party filed a respondent's brief.  Instead, counsel for all parties, including the Los Angeles County Department of Children and Family Services (the Department), parents, H.A., and minors, filed a joint application and stipulation agreeing that the Department failed to satisfy its inquiry obligations under ICWA and related California law and seeking a conditional reversal of the jurisdiction and disposition orders, remand to the juvenile court for compliance with ICWA, and issuance of an immediate remittitur.

We are not required to accept the parties' agreement to conditionally reverse and remand the matter for ICWA compliance.  (See *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664, [court in a civil case

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

may reject a stipulation that is contrary to public policy or incorporates an erroneous rule of law; court cannot surrender its duty and act as a puppet of the parties]; *People v. Segura* (2008) 44 Cal.4th 921, 931 [court can decline to approve a plea bargain in a criminal case]; *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 637 [rejecting the parties' joint stipulation for remand because it did not seek affirmance or reversal of the juvenile court's order and only sought a remand with directions to order ICWA compliance]; *In re A.C.* (2022) 86 Cal.App.5th 130, 142, (dis. opn. Baker, J.).) Under the Code of Civil Procedure, section 128, subdivision (a)(8), an appellate court may only reverse a judgment based on a party stipulation if it has found that no public or nonparty interest will be adversely affected by the reversal and the stipulating parties' reasons "outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8)(B).)[2] In deciding whether to accept the

---

[2] The relevant statutory text states: "Every court shall have the power to . . . . [¶] . . . [¶] . . . amend and control its process and orders so as to make them conform to law and justice. An appellate court shall not reverse or vacate a duly entered judgment upon an agreement or stipulation of the parties unless the court finds both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8).)

parties' stipulation and request to conditionally reverse, we consider the parties' proffered reasons in light of the requirements of Code of Civil Procedure section 128, subdivision (a)(8). (*In re Rashad H.* (2000) 78 Cal.App.4th 376, 381 [parties' reasons included judicial error and termination of rights without notice]; see also *In re B.D.* (2019) 35 Cal.App.5th 803, 820 [parties' proffered reasons for stipulated reversal do not overcome the presumption against stipulated reversals].)

The stipulation submitted by the parties here states that its purpose "is to place the parties in the same position they would be in if the appeal were prosecuted to successful completion and resulted in an order conditionally reversing the juvenile court's jurisdictional and dispositional findings and orders for the sole purpose of remanding the matter to proceed in compliance with the ICWA." The stipulation relies on *In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C.*) to argue that conditional reversal and remand is appropriate and should be granted, but *Dezi C.* involved an appeal from a termination of parental rights (*id.* at p. 1127), whereas parents here appeal from jurisdiction and disposition orders. A number of appellate courts, including this one, have declined to conditionally reverse juvenile court orders that are appealed prior to termination of parental rights. (See, e.g., *In re T.R.* (2023) 87 Cal.App.5th 1140, 1154 [affirming juvenile court orders in their entirety on the rationale that the issue of ICWA compliance remains before the juvenile court and any deficiencies may be corrected]; *In re Baby Girl M., supra*, 83 Cal.App.5th at pp. 638–639 & fn. 2 [dismissing appeal where all that the court of appeal could order in resolving the appeal was for DCFS and the juvenile court to fulfill their inquiry and notice obligations, which they were already doing]; *In re Dominick D.*

(2022) 82 Cal.App.5th 560, 563–564, 567–568 [affirming juvenile court's jurisdictional and dispositional findings and vacating the court's finding that ICWA does not apply]; *J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461 [finding ICWA issues premature or unripe and declining to consider them on writ petition from dispositional hearing].)

We briefly review the facts and law relevant to our decision to reject the parties' stipulation. The children were previously declared dependents in a prior dependency case that started in 2013 and ended in 2020 with mother and father adopting the children. The children's biological mother is deceased. Father is the children's paternal uncle, their biological father's brother.

During the Department's investigation in November 2023, mother and Hannah claimed possible Native American ancestry through the biological mother, and Hannah stated that her biological mother's sisters, maternal aunts Lilian G. and Jessica M., may have additional information. On December 6, 2023, mother informed the Department that she had asked the relatives of biological mother that she knows, and they denied any Indian ancestry and did not want her to share their contact information with the Department. The social worker also spoke with the children's adult brother, A.A., but did not ask him about possible Indian ancestry. Instead, the social worker asked A.A. for maternal aunt Lilian G.'s phone number. A.A. responded he would have to ask Lilian G. for permission before releasing the number. On the same day, the social worker unsuccessfully attempted to contact maternal aunt Lilian G. by phone. There is no evidence of any additional efforts to contact either maternal aunt.

At the detention hearing, father filed an ICWA-20 form, selecting the check box for the statement "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe." An explanation stated the children's paternal great-grandmother A.A. was born in the Choctaw tribe. Both father's attorney and the attorney for the Department reported to the court that ICWA had been found inapplicable in the children's prior dependency case. Noting that the Department had an ongoing duty of further inquiry and a duty to investigate claims of Native American heritage, the court ordered the Department to interview every known relative and other participants about possible Indian ancestry. The court took note of father's ICWA-20 form and asked father if he had any additional information about paternal great-grandmother's registration status with the Choctaw tribe. Father informed the court that she was deceased, but she had a roll number, and that the children's biological father might have additional information. The court directed father to provide the Department with contact information so the Department could investigate. Similarly, the court directed mother to provide to the Department contact information for the children's biological maternal aunts.

By December 2023, both mother and father denied that any relatives had any information about possible Indian ancestry on father's side of the family. According to the jurisdiction and disposition report filed on December 15, 2023, the Department unsuccessfully attempted to speak by phone with the children's adult brother, A.A., and father's biological children, who are the children's paternal cousins. Attached to the 2023 report was a 2013 report from the children's prior dependency case, which included information about additional paternal relatives: the

6

names of four additional adult siblings, three additional paternal cousins, who are father's biological children, and the name and phone number of a paternal second cousin.

The parties stipulate that this case involves reversable error based on the Department's noncompliance with the inquiry requirements of ICWA and related California provisions. Specifically, the Department did not comply with its initial inquiry obligations when a social worker spoke with the children's adult brother, A.A., and did not ask him if he had any information about potential Indian ancestry. In addition, father's ICWA-20 form and his responses to the court's questions about paternal great-grandmother gave the Department reason to believe minors were Indian children, triggering a duty of further inquiry under section 224.2, subdivision (e).[3]

Under section 224.2, subdivision (e)(2)(A), when there is reason for the Department to believe, but insufficient information to know, a child is an Indian child, the Department is required to inquire further including interviewing the parents and extended family members to gather the information required in section 224.3, subdivision (a)(5). The information required in section

---

[3] This duty of further inquiry is triggered if the Department or court "has reason to believe that an Indian child is involved" because the record contains "information suggesting" the child is an Indian child, and, once triggered, obligates the Department to conduct further interviews to gather information, to contact the Bureau of Indian Affairs and state department of social services for assistance, and/or to contact the relevant Indian tribe(s). (*Ibid*.) "[R]eason to believe" is defined as "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).)

224.3, subdivision (a)(5)(C) is: "All names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment, membership, or citizenship information of other direct lineal ancestors of the child, and any other identifying information, if known." In addition, section 224.2, subdivisions (e)(2)(B) and (e)(2)(C) specifies that further inquiry efforts include contacting the relevant federal agencies and tribes.

The court and the Department's duties of inquiry under ICWA continue throughout the dependency proceeding, particularly if subsequent information provides a reason to believe a minor is an Indian child under ICWA. (*Dezi C., supra*, 16 Cal.5th at pp. 1132, 1134; *In re Isaiah W.* (2016) 1 Cal.5th 1, 14 ["juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status"].)

No conditional reversal is necessary to permit the court and the Department to carry out their affirmative and continuing obligation to ensure ICWA compliance. (*In re Baby Girl M., supra*, 83 Cal.App.5th at pp. 638–639.) Consistent with our reasoning in *In re Baby Girl M.*, rather than approving the parties' stipulation and entering a conditional reversal that would micromanage the juvenile court's and the Department's obligations to fulfill their obligations under ICWA and related California law, we dismiss the parents' appeals as moot. (*Ibid.*)

# DISPOSITION

The appeals filed by K.A. and R.A. are dismissed.
NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


BAKER, Acting P. J.


KIM (D.), J.