[No. S175356. Dec. 30, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS LAMBERT MARTIN, Defendant and Appellant.

## COUNSEL

Conrad Herring, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lynne McGinnis and Kelley A. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—Many criminal matters are resolved not by trial but by plea agreements between the prosecution and the defendant. Typically, a plea agreement allows the defendant to plead guilty to one or more charges in exchange for dismissal of one or more other charges.

Implicit in the plea agreement, which is in the nature of a contract, is the understanding that the trial court cannot use the facts of a dismissed charge to impose "adverse sentencing consequences" unless the defendant consents or a transactional relationship exists between the admitted charge and the dismissed charge. (*People v. Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396] (*Harvey*).) In *Harvey*, the trial court imposed an increased prison term based on the facts of a dismissed charge. At issue here is whether *Harvey* applies to the imposition of probation conditions based on the facts of a dismissed charge. The Court of Appeal construed *Harvey* as limited to the imposition of prison sentences. It expressly disagreed with the Court of Appeal in *People v. Beagle* (2004) 125 Cal.App.4th 415 [22 Cal.Rptr.3d 757] (*Beagle*), which construed *Harvey* as applying also to the imposition of probation conditions. We agree with the latter view.

## I

In July 2008, defendant Louis Lambert Martin lived with his girlfriend in an apartment in San Bernardino. On July 27, police officers responded to a

call of domestic violence at the apartment. When the officers arrived, defendant was gone. Defendant's girlfriend told the officers that defendant had punched her in the face and choked her; the officers noticed redness and swelling on her nose and cheek. She also told the officers of defendant's past violence against her, and she expressed fear of him. After the officers checked the surrounding area and were unable to find defendant, they left.

Later that same day, the officers returned in response to the girlfriend's call that defendant was back. Upon arrival, the officers saw defendant walk up a staircase towards the apartment. They ordered defendant to stop. When defendant failed to do so, the officers ran up the staircase after him. As defendant entered the apartment's front door, one of the officers put his foot in the door to keep it open. Defendant shut the door on the officer's foot and ankle, injuring him. Defendant then fled, pursued by the officers, who later found him in a carport trying to hide under a car. When the officers handcuffed defendant, he put up a fight.

Defendant was charged with the felony of resisting an officer by the use of force or violence (Pen. Code, § 69; all further statutory references are to the Penal Code) and the misdemeanor of corporal injury to a cohabitant (§ 273.5, subd. (a)). The prosecution and defendant negotiated a plea agreement. In exchange for dismissal of the misdemeanor offense, defendant agreed to plead guilty to the felony charge, for which he would be placed on probation, which was to include service of 120 days in county jail.

The plea bargain did not mention that defendant would be subject to probation conditions based on the facts of the dismissed domestic violence charge. But at a later hearing the trial court stated its intention to impose such probation conditions.[1] When defense counsel objected, the trial court responded that if defendant did not accept those conditions, the court would set aside the plea agreement. After conferring with counsel, defendant agreed to all the terms of probation.

On appeal, defendant argued that the imposition of domestic violence probation conditions was improper because the plea agreement did not include his consent to probation conditions flowing from the dismissed domestic violence charge. The Court of Appeal upheld the challenged conditions. It noted that *Harvey* involved an increased prison term and therefore did not apply to probation, which it characterized as an act of grace or clemency. It rejected the contrary conclusion of the Court of Appeal in

---

[1] Defendant has not described the challenged probation conditions. Like the Court of Appeal, we presume that those conditions were these: requiring him to complete a 52-week "domestic violence batterers' program," to pay $400 to a domestic violence fund, and to pay $400 to a battered women's shelter.

*Beagle, supra*, 125 Cal.App.4th 415. To resolve the conflict, we granted defendant's petition for review.

## II

█ As noted earlier, the charges against defendant were resolved not by trial but by a plea bargain. We begin with a brief description of the basic nature of plea agreements. A plea bargain is a negotiated agreement between the prosecution and the defendant by which a defendant pleads guilty to one or more charges in return for dismissal of one or more other charges. (*People v. Segura* (2008) 44 Cal.4th 921, 930 [80 Cal.Rptr.3d 715, 188 P.3d 649] (*Segura*).) The agreement must then be submitted to the trial court for approval. The court must tell the defendant that the court's acceptance of the proposed plea is not binding, that the court "may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval," and that if the court does withdraw its approval the defendant may withdraw the plea. (§ 1192.5.) Thus, " '[j]udicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution.' " (*Segura, supra*, at p. 930.)

Because a negotiated plea agreement is in the nature of a contract, "it is interpreted according to general contract principles." (*People v. Shelton* (2006) 37 Cal.4th 759, 767 [37 Cal.Rptr.3d 354, 125 P.3d 290].) The trial court's approval of the agreement binds the court to the terms of the plea bargain, and the defendant's sentence must be within the negotiated terms. (*Segura, supra*, 44 Cal.4th at pp. 930–931.)

## III

Central to the issue here is our decision in *Harvey, supra*, 25 Cal.3d 754. There the defendant pled guilty to two counts of robbery, and the prosecution agreed to dismissal of a factually unrelated count of robbery. At sentencing, the trial court increased the defendant's prison sentence by using the facts of the dismissed, unrelated robbery charge. That, we stated, the trial court could not do: "In our view, under the circumstances of this case, it would be improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count three for purposes of aggravating or enhancing defendant's sentence. Count three was dismissed in consideration of defendant's agreement to plead guilty to counts one and two. *Implicit in such a plea bargain*, we think, is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count." (*Id.* at p. 758, italics added.)

Unlike *Harvey, supra,* 25 Cal.3d 754, the case now before us involves not a prison sentence but a grant of probation. As mentioned earlier, defendant pled guilty to the felony charge of resisting an officer in exchange for dismissal of the misdemeanor charge of domestic violence. In placing defendant on probation, the trial court imposed conditions that were related to the dismissed domestic violence charge. Defendant argues that because the plea bargain did not include his consent to those probation conditions, they fall within *Harvey*'s prohibition against "adverse sentencing consequences" that are based on a plea bargain's dismissed charge.

Defendant relies on *Beagle, supra,* 125 Cal.App.4th 415, a Court of Appeal decision that held that a "condition of probation adding a restriction on [a] defendant's conduct is an 'adverse sentencing consequence' " under *Harvey.* (*Beagle, supra,* at p. 421.) In rejecting the *Beagle* holding as "untenable," the Court of Appeal here stated that, unlike the imposition of a prison sentence, a grant of probation is an act of clemency by the trial court. The Court of Appeal observed, without elaboration, that probation conditions are valid as long as they (1) have a connection to the crime committed, (2) relate to conduct that is criminal, or (3) reasonably relate to future criminality. For reasons explained below, we agree with the *Beagle* court's view.

As discussed earlier, a negotiated plea agreement is in the nature of a contract. Thus, when the trial court accepts it, the agreement is binding on the parties and the court. (§ 1192.5; *Segura, supra,* 44 Cal.4th at pp. 930–931.) Thereafter, material terms of the agreement cannot be modified without the parties' consent. (*Segura, supra,* at p. 935.) And, as we stated in *Harvey, supra,* 25 Cal.3d at page 758, implicit in the plea bargain is the understanding that the facts of a dismissed charge not related to the facts of the charge to which the defendant entered a plea may not be used against him without his consent. Central to the *Harvey* holding is the recognition that the terms of the plea agreement are binding and are to be honored. Simply stated, the *Harvey* rationale is that "a deal is a deal."

In prohibiting "adverse sentencing consequences" related to the facts of a dismissed charge and not agreed to in the plea agreement, this court in *Harvey, supra,* 25 Cal.3d at page 758, used the quoted phrase simply to describe the specific way in which the plea agreement in that case was breached, not as a limitation on the ways in which plea agreements might be breached in other cases, and not as a modification of the principle that plea agreements are in the nature of contracts and are binding when accepted by the trial court. In arguing that *Harvey* does not apply here, the Attorney General emphasizes the rehabilitative nature of probation. (See *People v. Olguin* (2008) 45 Cal.4th 375, 379 [87 Cal.Rptr.3d 199, 198 P.3d 1]; *People v. Howard* (1997) 16 Cal.4th 1081, 1092 [68 Cal.Rptr.2d 870, 946 P.2d 828].) What matters,

however, is not whether the conditions further the purpose of probation, but whether imposing the challenged conditions breaches the terms of the plea agreement. (See § 1192.5 [defendants generally "cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea"].)

Similarly unpersuasive is the Attorney General's argument that a general statutory grant of authority to a trial court relating to probation, such as section 1203.1, subdivision (j)'s provision authorizing a trial court to impose any reasonable conditions, overrides the terms of a plea agreement. We recently rejected a closely related argument in *Segura, supra*, 44 Cal.4th 921. There the defendant and the prosecutor negotiated a plea agreement. The prosecution agreed to dismissal of a prior conviction allegation in exchange for the defendant's plea of no contest to the charge of inflicting corporal injury upon his spouse, with probation for five years subject to the condition that he serve 365 days in county jail. (*Id.* at p. 926.)

After the defendant in *Segura* was released from jail, federal authorities detained him and initiated deportation proceedings because he had been convicted of an " 'aggravated felony,' " which federal law defines as an offense that is subject to imprisonment of at least one year, or 365 days. (*Segura, supra*, 44 Cal.4th at p. 927.) The defendant then asked the state trial court that had sentenced him to alter his already served jail sentence to 360 days. The court denied the motion. It ruled that the 365-day sentence was part of the plea agreement and could not now be modified. The Court of Appeal reversed. It relied on section 1203.3, which allows a trial court, at any time during probation, to modify an order of suspension of imposition or execution of a sentence. Section 1203.3, the *Segura* Court of Appeal held, authorizes a trial court to modify any condition of probation, including those negotiated by the parties and accepted by the court. (*Segura, supra*, at pp. 928, 932.) We reversed the judgment of the Court of Appeal. We held that an express and material term of a negotiated plea agreement cannot be later modified by a court without the consent of both parties, and that such a term "cannot be altered solely on the basis of the trial court's general statutory authority to modify probation during the probationary period." (*Id.* at p. 935.)

Our decisions in *Harvey, supra*, 25 Cal.3d 754, and *Segura, supra*, 44 Cal.4th 921, control the issue here. As *Harvey* stated, an implied term of a plea agreement is that a defendant will not be adversely affected "by reason of the facts underlying, and solely pertaining to, the dismissed count." (*Harvey, supra*, at p. 758.) And, as *Segura* made clear, a trial court's general statutory authority to impose conditions of probation (see § 1203.1, subd. (j)) does not nullify or supersede the terms of the plea agreement. (*Segura, supra*, at p. 935.) If the trial court finds a plea agreement to be unacceptable, the

remedy is for the court to reject it, not to impose conditions inconsistent with the plea agreement. (*Id.* at p. 931.)

■ To summarize, when under a plea agreement a defendant pleads guilty to one or more charges in exchange for dismissal of one or more charges, the trial court cannot, in placing the defendant on probation, impose conditions that are based solely on the dismissed charge or charges unless the defendant agreed to them or unless there is a "transactional" relationship between the charge or charges to which the defendant pled and the facts of the dismissed charge or charges. (*Harvey, supra,* 25 Cal.3d at p. 758.) We now apply that holding to this case.

## IV

When the trial court, before accepting the plea bargain, expressed its intention to impose certain probation conditions related to the dismissed domestic violence charge, defense counsel objected. The trial court stated that it would reject the plea bargain unless defendant agreed to the domestic violence conditions. After defense counsel conferred with defendant, the following colloquy between defense counsel and the court occurred:

"[Counsel:] He wants to stand by his plea, Your Honor.

"[Court:] I don't know what that means.

"[Counsel:] *Based on the Court's indicated sentence and probation terms, he's willing to accept those probation terms.*

"[Court:] And the D.V. [(domestic violence)] terms?

"[Counsel:] Yes, Your Honor." (Italics added.)

■ The trial court then accepted the plea agreement and placed defendant on probation. Because defendant expressly agreed to the domestic violence conditions of probation, they were validly imposed. As that conclusion resolves this case, we need not and do not decide whether the admitted charge and the dismissed charge were "transactionally related." (*Harvey, supra,* 25 Cal.3d at p. 758, italics omitted.)[2]

---

[2] To be clear, we are concluding, as a matter of substantive law, that the trial court did not err when it imposed the domestic violence probation conditions, which were based on a dismissed charge, because defendant expressly agreed to those very conditions, thereby waiving the right this court recognized in *Harvey, supra,* 25 Cal.3d at page 758. We are not here addressing any procedural questions regarding preservation or forfeiture of appellate issues. Such questions might be presented if, instead of expressly agreeing to the domestic

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

---

violence probation conditions, defendant instead had failed to object, or had withdrawn his objection, to those conditions. (See *People v. Welch* (1993) 5 Cal.4th 228, 234–237 [19 Cal.Rptr.2d 520, 851 P.2d 802] [trial court objection generally required to preserve challenge to probation condition].) Likewise, we are not considering a situation in which a defendant, after the trial court has overruled an objection to proposed probation conditions, has merely agreed to accept the grant of probation without expressly agreeing to the challenged probation conditions.