KENNARD, J., Dissenting.
The United States Circuit Court of Appeals for the Ninth Circuit has asked this court to answer a question of California law. As rephrased by this court, the question is this: “Under California law of contract interpretation^] as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement bind the parties or can the terms of a plea agreement be affected by changes in the law?”
Today, this court’s majority holds that “requiring the parties’ compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement . . . .” (Maj. opn., ante, at p. 73.) This broad language means that new changes in the law must be followed even though they were not contemplated by the parties when they negotiated the terms of their agreement, which is a form of contract. I do not share the majority’s view. I would hold that only if the new legislation does not materially affect the plea agreement’s terms can the parties be required to comply with the new law. Put differently, a legislative change in the applicable law binds the parties unless the new law so alters the plea agreement that, had the parties known of it at the time of the plea, one or both would not have entered into the agreement. Because I would answer the Ninth Circuit’s question differently than the majority, I dissent.
I
In 1991, John Doe was charged with six counts of lewd and lascivious acts on a child younger than 14 years. (Pen. Code, § 288, subd. (a) (all further statutory references are to this code).) Later that year, he pled guilty to one of the counts in exchange for dismissal of the other five. Under the agreement, Doe was placed on probation and required to register as a sex offender. (§ 290.) At the time of the plea, Doe’s counsel correctly advised him that, under then existing law, the registration information would be available only to law enforcement officers, not the general public. (See former § 290, subd. (i), as amended by Stats. 1989, ch. 1407, § 4, pp. 6191-6195.) The parties did not discuss the possibility of any future law altering the confidentiality of the registration information.
In 1994, three years after the plea negotiations here, the California Legislature required the state Department of Justice to maintain a telephone *75 number that members of the public could call to find out whether a particular person was registered as a sex offender. (Former § 290.4, added by Stats. 1994, ch. 867, § 4, p. 4396.) And in 2004, the Legislature required the state Attorney General to create a publicly accessible Web site containing the name, address, and photograph of anyone who, having been convicted of certain sex crimes (including the one to which plaintiff Doe pled guilty), had to register as a sex offender. (§ 290.46, added by Stats. 2004, ch. 745, § 1, pp. 5798-5803.) The latter statute, by its express terms, applies retroactively to anyone who, like plaintiff Doe here, had to register as a sex offender before enactment of the new law. (§ 290.46, subd. (m).)
Doe filed a complaint in federal district court, alleging that public disclosure of his status as a convicted sex offender breached the terms of his plea bargain, thereby violating his right to due process under the federal Constitution’s Fourteenth Amendment. (See 42 U.S.C. § 1983.) After the court enjoined the state Attorney General from disclosing to the public plaintiff’s status as a sex offender, the Attorney General appealed to the Ninth Circuit, which, before deciding the case, asked this court to determine the applicable state law.
II
A plea agreement negotiated in a criminal case is a form of contract, and therefore it is interpreted according to general contract principles. A trial court’s acceptance of the agreement binds the court as well as the parties to the agreement. (People v. Segura (2008) 44 Cal.4th 921, 930-931 [80 Cal.Rptr.3d 715, 188 P.3d 649] (Segura).)
Helpful here is this court’s decision in Swenson v. File (1970) 3 Cal.3d 389 [90 Cal.Rptr. 580, 475 P.2d 852] (Swenson). At issue there was whether the enforceability of a covenant not to compete, contained in a partnership agreement signed by partners in an accounting firm, should be determined by the law in effect when the agreement was executed, or when a departing partner breached it. The former, Swenson held, was the proper answer. “[L]aws enacted subsequent to the execution of an agreement,” Swenson said, “are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the inténtion of the parties.” (Swenson, supra, 3 Cal.3d at p. 393.) The court explained: “The parties are presumed to have had existing law in mind when they executed their agreement [citation]; to hold that subsequent changes in the law which impose greater burdens of responsibilities upon the parties become part of that agreement would result in modifying it without their consent, and would promote uncertainty in commercial transactions.” (Id. at p. 394; see Alpha Beta Food Markets Inc. v. Retail Clerks Union (1955) 45 Cal.2d 764, 771 [291 *76 P.2d 433] [“ ‘[A]ll applicable laws in existence when an agreement is made . . . necessarily enter into the contract and form a part of it ... as if they were expressly referred to and incorporated.’ ”].)
The holding in Swenson that laws enacted after a contract is signed ordinarily do not become part of the contract reflects the views of other state courts. (See 11 Williston on Contracts (4th ed. 2012) § 30:23, pp. 289-290 [citing numerous cases holding that “as a rule of construction, changes in the law subsequent to the execution of a contract are not deemed to become part of [the] agreement unless its language clearly indicates such to have been [the] intention of the parties”]; 17A Am.Jur.2d (2004) Contracts, § 372, p. 360 [stating the generally accepted view that “statutes . . . enacted subsequent to the execution of a contract, which add burdens or impair the obligations of the contract, may not be deemed to be a part of the agreement unless the language of the agreement clearly indicates this to have been the intention of the parties”].) That general principle of contract law is equally applicable to a plea agreement in a criminal case, as such an agreement is a contract and therefore governed by general principles of contract law. (See p. 75, ante.) Like the parties to any other contract, the parties to a plea agreement are, to borrow a phrase from Swenson, “presumed to have had existing law in mind when they executed their agreement.” (Swenson, supra, 3 Cal.3d at p. 394.) Thus, “to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent . . . .” (Ibid.)
The majority here distinguishes Swenson, supra, 3 Cal.3d 389: “. . . Swenson, unlike ... the present case, considered the effect on a contractual agreement of a change in the law that was not intended to apply retroactively. Our explanation there that the parties to a contract generally do not contemplate that subsequent law will be incorporated into their agreement must be understood in that context . . . .” (Maj. opn., ante, at pp. 69-70, italics added.) Retroactive legislative changes, the majority concludes, bind the parties to a contract, and hence also bind the parties to a plea agreement. I disagree.
Central to the holding in Swenson, supra, 3 Cal.3d 389, is the recognition that because parties to a contract generally do not contemplate that later law will be incorporated into their agreement, the new law should not become part of the earlier executed agreement. (See 11 Williston on Contracts, supra, § 30:19, p. 274 [“ ‘[T]he courts, in construing the existing law as part of the express contract... are merely construing the contract in accordance with the intent of the parties.’ ”].) That general principle applies to any contract, irrespective of whether a later change in the applicable law is prospective or retroactive.
*77 According to the majority here: “Our explanation in Swenson[, supra, 3 Cal.3d 389,] that, as a general rule, contracts incorporate existing but not subsequent law, does not mean that the Legislature lacks authority to alter the terms of existing contracts through retroactive legislation.” (Maj. opn., ante, at p. 70.) But the question here is not whether the Legislature has such authority; rather, the question presented is whether such a change will “ ‘bind the parties’ ” (see p. 66, ante). It may well be that the Legislature’s retroactive alteration of a term of a contract will invalidate that contract. For example, if two lawyers enter into an agreement that includes a fee-splitting provision, and the Legislature thereafter retroactively makes such provisions ' illegal, the entire agreement may become unenforceable. Similarly, if retroactive legislation significantly alters the terms in a plea agreement, the alteration may invalidate the entire agreement. (In that case, the guilty plea should be vacated and any dismissed charges should be reinstated.)[1]
m
When a new law alters the terms of an executed plea agreement, the continuing enforceability of the agreement depends, in my view, on whether the alteration is material. As this court recently said, once a plea agreement has been accepted by the trial court, “material terms of the agreement cannot be modified without the parties’ consent.” (People v. Martin (2010) 51 Cal.4th 75, 80 [119 Cal.Rptr.3d 99, 244 P.3d 496]; see Segura, supra, 44 Cal.4th at p. 935 [because “the term of incarceration . . . constitutes a material term of . . . the parties’ agreement ... the jail term is not subject to subsequent modification without the consent of both parties” (fn. omitted)].) But when is a term in a plea agreement “material”? That question has so far not been addressed by this court. (See Segura, supra, 44 Cal.4th at p. 935, fn. 10 [“We need not determine as a general matter what constitutes a material term of a plea agreement. . . .”].)
In my view, a term in a plea agreement is material if it is essential to a party’s decision to enter into the agreement. Likewise, a criminal defendant who is misadvised as to the consequences of a guilty plea can obtain relief only by showing “that the defendant would not have entered the [bargained-for] plea of guilty had the trial court given a proper advisement.” (In re Moser (1993) 6 Cal.4th 342, 352 [24 Cal.Rptr.2d 723, 862 P.2d 723]; see Williams v. Puccinelli (1965) 236 Cal.App.2d 512, 516 [46 Cal.Rptr. 285] [A contract is subject to rescission “ ‘where there is a harmful mistake as to some basic or material fact which induced the plaintiff to enter into it. [Citations.] ... It must affect in some material way one of the essential elements of the *78 contract, ... so that... the complaining party would not have entered into it except for his mistaken belief.’ ”].) My definition of materiality also reflects a standard legal dictionary’s definition of “material” as meaning “[o]f such a nature that knowledge of the item would affect a person’s decision-making; significant; essential.” (Black’s Law Dict. (9th ed. 2009) p. 1066, col. 1.) I would therefore answer the Ninth Circuit’s question by saying that a change in the law binds the parties to a plea agreement unless the change is so significant that, had the parties known of it at the time of the plea, one or both parties would not have entered into the agreement.

 Here, the federal district court ordered the California Attorney General not to disclose plaintiff Doe’s status as a registered sex offender to the general public. The propriety of that remedy is not before this court, and I express no view on it.