Filed 2/19/21  Kirkendall v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JACOB THOMAS KIRKENDALL, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF MONTEREY COUNTY, <br><br> Respondent; <br><br> THE PEOPLE, <br><br> Real Party in Interest. | H048206 <br> (Monterey County <br> Super. Ct. No. 17CR006035) |

## I.   INTRODUCTION

In February 2019, pursuant to a negotiated disposition, petitioner Jacob Thomas Kirkendall pleaded guilty to assault with a firearm (Pen. Code, § 245, subd. (a)(2)),[1] assault with a deadly weapon (§ 245, subd. (a)(1)), and misdemeanor resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)).  Petitioner also admitted the allegation that he personally and knowingly used a firearm (§ 12022.5, subd. (a)).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

In exchange for petitioner's guilty plea, the parties agreed that petitioner would waive all custody credits and be placed on probation for 14 years. Among other terms, petitioner "would be going to Alpine Special Treatment Center for the next year at least, and . . . would be able to go to a step-down program in no less than a year and only after the approval of both Alpine's recommendation and the Court's approval of a step-down program from Alpine." The court would make its release decision "listening to the experts at Alpine." The plea agreement did not specify a custody term other than "at least" one year at Alpine.

In May 2020, petitioner filed a motion for sentence modification, requesting his release from Alpine into a step-down program. The trial court denied the motion, finding petitioner's time in custody at Alpine insufficient based on the seriousness of his offense.

In a habeas petition that we deemed a petition for writ of mandate, petitioner contends that the trial court's denial of his sentence modification motion violated the terms of the negotiated plea agreement. Petitioner claims that the denial decision was therefore in excess of the court's jurisdiction and violated his due process rights. Petitioner also contends that the denial of his release constitutes cruel and unusual punishment in light of his medical condition and the COVID-19 crisis.

We conclude that the trial court exceeded its jurisdiction when it denied petitioner's release into a step-down program because it based its ruling on the length of petitioner's incarceration in relation to the seriousness of his offense, which was not a term of the negotiated plea agreement. We therefore issue a preemptory writ of mandate commanding the trial court to reconsider petitioner's motion for sentence modification.

## II.    BACKGROUND[2]

### A. *Charges and Plea Hearing*

Petitioner was charged with assault with a firearm (§ 245, subd. (a)(2); count 1), shooting at an inhabited dwelling house or occupied building or vehicle (§ 246; count 2), three counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3-5), and misdemeanor resisting, delaying, or obstructing a peace officer (§ 148, subd. (a); count 6).  It was also alleged that petitioner personally and knowingly used a firearm during the commission of count 1 (§ 12022.5, subd. (a)).

In February 2019, petitioner pleaded guilty to counts 1, 3, and 6 and admitted the firearm allegation.  As relevant here, petitioner's counsel stated at the plea hearing that the parties agreed petitioner "would be going to Alpine Special Treatment Center for the next year at least, and . . . would be able to go to a step-down program in no less than a year and only after the approval of both Alpine's recommendation and the Court's approval of a step-down program from Alpine."

During the trial court's voir dire of petitioner, the court asked whether counsel's recitation of the disposition was petitioner's "understanding of what will happen with [his] case," and petitioner responded affirmatively.  The court also asked petitioner, "Besides what has just been stated here in open court, have any other promises been made to you?"  Petitioner responded, "No."  Later in the voir dire, the court stated that "the negotiated disposition is that the experts at the facility have to say you are ready to leave and can go into . . . a step-down facility, meaning probably not locked or something else."  Petitioner responded, "Right."  The court added, "And that the Court would also have to agree to that" and that "it would be the Court who is making this decision

---

[2] We summarize the factual and procedural background based on the limited record before us, including transcripts of the plea hearing and the hearing held after this court issued an alternative writ of mandate.  The record provided by the parties does not include petitioner's waiver of rights form, the sentencing transcript, or the sentencing minute order.

3

listening to the experts at Alpine." The court asked petitioner if he understood and petitioner responded, "Yes."

**B.** *Motion for Sentence Modification and Motion to Reconsider*

On May 6, 2020, petitioner filed a motion for "sentence modification." (Capitalization and bold omitted.) Petitioner claimed he had made sufficient progress at Alpine and could be safely released. Petitioner proposed a release plan that involved an intensive outpatient program, individual psychotherapy, medication management and testing to confirm compliance, recovery meetings, home confinement at petitioner's parents' home monitored by an ankle bracelet, random drug testing, and communication with the probation department. Petitioner asserted that his release was necessary for his continued treatment progress and because of the risk posed by COVID-19 in light of his "pre-existing lung damage."

Exhibits to the motion included medical records pertaining to petitioner's lung condition, a psychologist's evaluations of petitioner, an Alpine discharge summary and aftercare plan, Alpine records regarding petitioner's treatment and progress at the facility, a letter from Alpine's clinical director, and petitioner's medication record at Alpine. The psychologist opined that petitioner had "adequately participated in and benefitted from" Alpine's treatment; had "gained and displayed sufficient insight"; and "demonstrated a commitment to sobriety[, which] is a particular vulnerability for his remaining medication compliant." The psychologist found that petitioner "requires a longer term, outpatient individual psychotherapy, medication management with a singular provider . . . bolstered by outpatient group support" and "needs to establish a relationship with a network of sober recovery meetings to rely upon over time." Alpine's clinical director stated that petitioner had "met several treatment goals" and recommended that he continue his treatment "on an outpatient basis."

The prosecution filed a written statement indicating that it did not object to petitioner's proposed sentence modification, nor did the victim. The prosecution also

4

proposed 17 release conditions to "supplement the conditions imposed by the Court at the sentencing."

The trial court heard petitioner's motion on May 8, 2020. The hearing was held virtually and seemingly without video. The trial court stated at the outset of the hearing that it was going to deny petitioner's motion. The court explained, "I am terribly uncomfortable with this. [Petitioner] has been in Alpine since I believe last February. That would be a year and two months. He shot and hit, . . . a law enforcement or I think a forest individual. [¶] This was a negotiated disposition that the court was uncomfortable with at the time. Any other person would have been sentenced to a lengthy term in state prison. I am not at this point ready to release [petitioner]." The court then asked the parties if they wanted to be heard.

An unidentified speaker asked if petitioner's counsel was on the line. The prosecution responded that it had provided petitioner's counsel "with the link" for the hearing. The prosecution then stated that its lack of opposition to petitioner's release was not based on COVID-19 concerns but that "it seemed as though [petitioner] completed all the psychiatric care at . . . Alpine." The court responded that it had "never seen a disposition with these facts. There are consequences to behavior. He did shoot someone. Letting [petitioner] out to [*sic*] after such an early amount of time was not anticipated, nor would [the court] have accepted that kind of disposition. It is inconsistent with other cases similarly situated." The court raised an example of a similar case where the offender was sentenced to "state prison double digits" and stated that it was "not inclined to do this."

After a pause, petitioner's counsel joined the proceedings. The court stated that it had reviewed the motion and the prosecution's position and that it was going to deny petitioner's request for release. The court observed that "[t]his is a case where the [petitioner] got out of a vehicle, approached the victim and shot him"; "[a]ny other case with this [*sic*], would be a significant state prison commitment"; and the court had

5

reluctantly agreed to the disposition "based on [petitioner's] medical condition." The court concluded, "[T]here are consequences to behavior. [Petitioner] did engage in a very violent, very dangerous action, and I am not releasing him at this time. So your request is respectfully denied."

Petitioner filed a motion to reconsider, contending that the trial court had improperly modified the probationary terms in excess of its jurisdiction and in violation of petitioner's due process rights, and that the denial of his release constituted cruel and unusual punishment. The trial court denied the motion. The "Out of Court Entr[y] by [the] Clerk" stated that the court had "read and considered the Points and Authorities in Support of Motion to Reconsider Probation Modification" and "respectfully decline[d] to modify the ruling denying the previously heard motion."

### C. *Petition and Issuance of Alternative Writ of Mandate*

Petitioner filed the instant petition in this court, contending that the trial court violated the terms of the plea agreement when it denied his sentence modification motion and that the denial of his release constituted cruel and unusual punishment in light of his medical condition and the COVID-19 crisis.

After informal briefing by the parties, this court issued an alternative writ of mandate, commanding the trial court "to vacate its . . . order denying petitioner's request to modify his sentence and to conduct a hearing to reconsider the matter and enter a new and different order after considering the recommendation of the medical health professionals at Alpine Center for petitioner to be released into a step-down program as contemplated by the plea agreement; or to show cause before this court at a time and place to be specified by court order why a peremptory writ of mandate should not issue to compel the foregoing actions."

### D. *Hearing and Order Post-Issuance of Alternative Writ*

At the hearing after our issuance of the alternative writ, the trial court stated that the record needed to be "clarified" regarding its in-chambers discussions with counsel

6

about the negotiated disposition.  The court relayed that it was assured by counsel that "both Alpine and the Court would have to both independently agree to release [petitioner]."  The prosecution concurred.  Petitioner's counsel stated that it was his understanding that the court "would have been the authority to be able to release [petitioner] upon the advice and the consent of the medical professionals" and that "if the medical professionals cleared [petitioner] that the Court would then follow the directives of the medical professionals."  The court responded that "perhaps the answer is to allow [petitioner] to withdraw his plea," and that both parties stated in chambers that petitioner's release was "up to this Court unless both Alpine and the Court agree." Petitioner's counsel concurred, but later added that the court did not indicate at the time of the plea that petitioner would have to serve "two-and-a-half years, . . . three-and-a-half years, . . . 17-and-a-half years" before his release.  Counsel stated, "My understanding was there had to be at least a one-year waiting period, at least that time.  And after that period of time, then the Court would, upon the directives or the opinion and advice of the medical professionals, make its own independent determination."  The court responded that both counsel represented to it in chambers that the release decision was up to "this Court's discretion and this Court's discretion alone, [and] that [it] did not have to go along with what Alpine said."  At the hearing's conclusion, the prosecution relayed that the victim now opposed petitioner's release for safety reasons.

By written order, the trial court denied petitioner's release.  The court ruled: "The court has thoughtfully reconsidered the recommendation of the medical health professionals at Alpine . . . opining that petitioner should be released to a step-down program . . . .  Notwithstanding Alpine's stated position, the court respectfully declines to release petitioner, at this time.  [¶]  The plea agreement mandated that both the court and Alpine . . . had to independently agree when petitioner could be released.  Neither entity had unilateral authority to command his release, according to the negotiated disposition.  [¶] . . . [¶]  The court's decision to continue petitioner's current locked

7

residential placement reflects the court's belief that he has been confined for an insufficient time based on the severity of the underlying criminal conduct. This takes into consideration similarly situated [petitioners] who suffer from physical and mental health issues and who have engaged in comparable conduct. [¶] Additionally, the court is influenced by the victim's stated belief that petitioner should not be released . . . . [¶] Finally, as required by the negotiated disposition, the court must approve of the proposed 'step-down' program. The court is not persuaded that the suggested arrangement to allow petitioner to reside with his parents is a sufficiently structured environment to protect the safety of the public."

After the parties informed us of the trial court's second order denying release, we determined that "[a]lthough respondent court was under no obligation to grant the relief requested by petitioner, this court finds based on the record that respondent court has not complied with the alternative writ of mandate."

### III.    DISCUSSION

Plea agreements are a vital part of the criminal justice system, " 'essential to the expeditious and fair administration of our courts.' " (*People v. Segura* (2008) 44 Cal.4th 921, 929 (*Segura*).)  "[T]he process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court.' [Citations.] Pursuant to this procedure the defendant agrees to plead guilty . . . in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he [or she] were convicted of all offenses charged." (*Id.* at pp. 929-930; see also §§ 1192.1-1192.6.)  " 'Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution.' " (*Segura*, *supra*, at p. 930.)

If a trial court disapproves of the parties' negotiated disposition, it may reject it. (*Segura*, *supra*, 44 Cal.4th at p. 931.)  On the other hand, if the court accepts the plea agreement, it is bound by it, as are the parties. (*Id.* at p. 930.)  " 'Once the court has

accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain . . . unless, of course, the parties agree." [Citation.]' " (*Id.* at p. 931.)

Because a plea agreement is a form of contract, it is interpreted pursuant to general contract principles. (*People v. Shelton* (2006) 37 Cal.4th 759, 767 (*Shelton*).) " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." [Citations.]' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.]' [Citations.]" (*Ibid.*)

Petitioner contends that the trial court exceeded its jurisdiction and violated his due process rights when it denied his release from Alpine into a step-down program because the court did not abide by the terms of the plea agreement. Petitioner asserts that although the plea agreement gave the trial court final say regarding whether and when to release him, it is "clear that [the release] decision [was to] be made based on 'listening to the experts at Alpine,' " and that his release from Alpine "could occur after as little as one year."

The terms of the negotiated plea agreement at issue here were stated at the plea hearing. The parties agreed that petitioner "would be going to Alpine . . . for the next year at least, and . . . would be able to go to a step-down program in no less than a year and only after the approval of both Alpine's recommendation and the Court's approval of a step-down program from Alpine." During its voir dire of petitioner, the trial court

9

stated that "the negotiated disposition is that the experts at the facility have to say you are ready to leave and can go into . . . a step-down facility, meaning probably not locked or something else"; that the court "would also have to agree to that"; and "it would be the Court who is making this decision listening to the experts at Alpine." Petitioner indicated that no promises had been made to him other than those stated in open court and that he understood the agreement's terms.

It is apparent from the statements at the plea hearing that several conditions had to be met for petitioner to secure his release from Alpine under the terms of the plea agreement. Petitioner had to remain at Alpine for at least a year; Alpine's experts had to determine petitioner was "ready to leave"; Alpine's experts had to approve a "step-down program"; and the trial court had to "approv[e] of a step-down program from Alpine." The "step-down program" involved release "into . . . a step-down facility, meaning probably not locked or something else." The court would make the release decision "listening to the experts at Alpine." Thus, based on these stated terms, the trial court had discretion under the plea agreement to approve or reject "a step-down program from Alpine," which it would exercise "listening to the experts at Alpine."

In contravention of the agreement's terms, the trial court did not consider the recommendations of Alpine's experts when it initially denied petitioner's motion for sentence modification requesting his release into a step-down program. Rather, the court denied the motion because it was "terribly uncomfortable" releasing petitioner after he had spent only a year and two months at Alpine given the gravity of his offense. The court observed that petitioner "shot and hit" a park ranger and that it had "never seen a disposition with these facts." The court remarked that "[a]ny other person would have been sentenced to a lengthy term in state prison"; twice stated that "[t]here are consequences to behavior"; and gave an example of a similar case where the offender was sentenced to "state prison double digits." The court did not mention the proposed step-down program or the medical treatment experts' recommendations.

10

Although the trial court declared at the first hearing on petitioner's motion that releasing petitioner "after such an early amount of time was not anticipated," the record of the plea hearing indicates that the parties agreed that petitioner "would be able to go to a step-down program in no less than a year." In addition, the court voiced concern about petitioner's ability to pay for Alpine if "the facility says he's not getting out in a year and they want him another year or additional years." Petitioner's counsel responded that petitioner had the ability to pay for more than a yearlong stay and stated, "We expect that [petitioner's] stay [at Alpine] will be a year, and if it's longer, it's longer." This exchange shows that the court and the parties contemplated that petitioner's release after a year at Alpine was possible—as does the prosecution's lack of opposition to petitioner's release.

Importantly, there was no mention at the plea hearing that the trial court could rest its release decision on what it felt was an appropriate amount of custody time at Alpine given petitioner's offense. Instead, petitioner was told that the trial court had to approve of a step-down program and would make its release decision "listening to the experts at Alpine." Petitioner indicated that he understood those terms and that no other promises had been made to him. Thus, there is no basis in the plea record to conclude that the prosecution and the court " 'believed, at the time of making [the agreement], that [petitioner] understood' " that the court's release determination could be based on the gravity of petitioner's offense. (*Shelton*, *supra*, 37 Cal.4th at p. 767.)

The trial court's attempt to clarify the record after we issued an alternative writ of mandate does not change our assessment of the plea agreement's terms because the court focused solely on the court's in-chambers discussions with counsel, which petitioner neither acknowledged at the plea hearing nor agreed to. A "plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." (*Santobello v. New York* (1971) 404 U.S. 257, 261-262.) Moreover, petitioner's counsel maintained at the hearing after we issued the

11

alternative writ that the agreement was that the court would ground its release decision on Alpine's recommendations—whether it ultimately approved those recommendations or rejected them. Counsel's statements regarding the in-chambers discussions are consistent with the terms of the agreement itself, namely, that petitioner's release would be contingent on the court's "approval of a step-down program from Alpine" and that it would make its decision "listening to the experts at Alpine."

While the trial court properly considered the Alpine experts' recommendations when it denied petitioner's release after we issued the alternative writ, it continued to base its decision, at least in part, on a term not included in the plea agreement—the length of petitioner's custody at Alpine in relation to the seriousness of his offense. The court stated in its written denial order, "The court's decision to continue petitioner's current locked residential placement reflects the court's belief that he has been confined for an insufficient time based on the severity of the underlying criminal conduct. This takes into consideration similarly situated defendants who suffer from physical and mental health issues and who have engaged in comparable conduct."

The Attorney General acknowledges that "[t]o the extent the trial court may have initially decided petitioner required more time at [Alpine] *notwithstanding* information it considered in the progress reports, . . . the order was unauthorized . . . . Although the parties explicitly agreed that the trial court would maintain discretion to approve or deny petitioner's release to a step-down program, they agreed it would do so based on the trial court's assessment of the conclusions and recommendations of the treatment personnel as contained in the progress reports."

Thus, even though the court also disapproved the proposed step-down program because it was "not persuaded that the suggested arrangement to allow petitioner to reside with his parents is a sufficiently structured environment to protect the safety of the public," it continued to exceed its jurisdiction by partially basing its decision on a nonincluded term. The trial court may exercise its discretion to grant or deny release

based on the proposed step-down program in light of the medical treatment experts' findings and recommendations and in consideration of public safety. However, under the terms of the plea agreement, the court may not consider the length of petitioner's incarceration in relation to the gravity of his offense because that was not an agreed-upon term.

Once the trial court accepted the plea agreement, it lacked jurisdiction to modify its terms—by adding a term not agreed upon—without the parties' consent. (See *Segura*, *supra*, 44 Cal.4th at p. 931; see also *People v. Martin* (2010) 51 Cal.4th 75, 80.) Had the court " 'consider[ed] the plea bargain to be unacceptable, its remedy [was] to reject it, not to violate it, directly or indirectly.' " (*Segura*, *supra*, at p. 931.)

For these reasons, we determine that it is necessary to remand this matter for the trial court's reconsideration of petitioner's motion for sentence modification. Pursuant to the terms of the negotiated plea agreement, the trial court shall render its decision on petitioner's motion based on its approval or rejection of a proposed step-down program while considering the medical treatment experts' recommendations and "listening to the experts at Alpine." The trial court shall not base its determination of whether to release petitioner on any nonagreed-upon terms, including the length of petitioner's incarceration in relation to the gravity of his offense. The trial court shall also consider petitioner's claim that his continued incarceration violates the Eighth Amendment. We express no opinion regarding the decision the trial court should reach on remand.

## IV.    DISPOSITION

Let a peremptory writ of mandate issue commanding respondent court to (1) vacate its October 21, 2020 order denying petitioner's motion for sentence modification; (2) consistent with the terms of the negotiated plea agreement, reconsider petitioner's motion for sentence modification while assessing the medical treatment experts' recommendations and without reliance on any nonagreed-upon terms, including the length of petitioner's incarceration in relation to the gravity of his offense;

13

(3) consider petitioner's claim that his continued incarceration violates the Eighth Amendment; and (4) enter a new and different order approving or rejecting petitioner's release into a proposed step-down program. We express no opinion regarding the decision the trial court should reach on remand.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

GROVER, J.

***Kirkendall v. Superior Court***
**H048206**