Filed 8/5/22  P. v. Markham CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARRIE MARKHAM,<br><br>    Defendant and Appellant. | A162600<br><br>(Napa County Super.<br> Ct. No. 19CR002167) |

Carrie Markham appeals from an order denying her petition pursuant to Assembly Bill No. 1950 (AB 1950) to reduce a three-year probation sentence she received following her no contest plea to theft from an elder or dependent adult, her 86-year-old mother (victim).  (Pen. Code, § 368, subd. (d).)[1]  We affirm.

## I.    FACTS AND PROCEDURAL HISTORY

### A. Complaint and plea

On March 5, 2020, the Napa County District Attorney filed an amended complaint charging appellant with three felony offenses, including grand theft of personal property (count 1);

---

[1] Except where otherwise indicated, all statutory references are to the Penal Code.

1

theft from an elder or dependent adult (count 2); and identity theft (count 3).  (§§ 487, subd. (a), 368, subd. (d), 530.5, subd. (a).)

On the same day, appellant pled no contest to count 2—theft from an elder or dependent adult—and the trial court suspended imposition of sentence.  (§ 368, subd. (d).)  Pursuant to a plea agreement that included a *Harvey*[2] waiver as to counts 1 and 3, appellant was placed on three years' probation.

## B. Factual basis for the plea

Before entering the plea, the appellant and her attorney agreed to, and the trial court accepted, a summary of police reports (summary report) as the factual basis for appellant's crime.[3]  The summary report included the following information:

(1)  In the early 2000's, the victim was going to have a major surgery and gave the appellant power of attorney in case "something happened" to her.  The appellant was not to spend any of the victim's money without the victim's permission.

(2)  At some time over the next 10 years, the appellant allegedly stole approximately $20,000 from the victim.  This crime was never investigated or prosecuted by the authorities.  The victim and appellant had a falling out over the theft, but later patched up their relationship before the charges in this appeal were reported.

---

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

[3] The summary report was written by the probation officer and located within the probation officer's report for felony presentencing.

2

(3)  In 2018, the victim's grandson (grandson) found that the appellant had made numerous unauthorized charges to the victim's bank account over the previous year.  The charges were made through ATM withdrawals, transfers, and miscellaneous service and retail transactions in the amount of nearly $40,000.

(4)  Grandson discovered through an online credit report that the victim had 25 credit cards in her name.  Through further investigation, grandson found out that the victim had asked the appellant to destroy a stack of credit cards with accounts in the victim's name.  At the time of the credit check, some of these credit cards were open, some were closed, and some were maxed out.  The victim was unaware these accounts still existed.

(5)  After finding out about the unauthorized charges, the victim hired an attorney to change her beneficiaries.  The attorney uncovered that, unbeknownst to the victim, a $55,000 loan had been taken out against the victim's home.  The loan documentation showed a signature matching the appellant's handwriting.

(6)  Grandson called the appellant to perform a pretext phone call.  During the call, the appellant said, " 'I fucked everything up.' "  She went on to say she took out the loan for $55,000 in order to support the victim, and the ATM withdrawals were a result of her (the appellant) being scammed.[4]  Grandson also asked appellant about the victim's missing medication and appellant said she had flushed it down the toilet.

---

[4] Appellant admitted that she was a victim of a "romantic scam with someone overseas."

(7) A search warrant was executed at the appellant's residence, and appellant was interrogated. After being read her rights, appellant said her reason for taking the money was because she had been scammed. She also admitted to getting loans on some of the victim's jewelry before saying she was sorry for what she had done. During the search of appellant's home, a prescription for the victim was located, along with two iPhones, pawn slip receipts for loans, a private loan letter for $55,000, a FedEx envelope with miscellaneous gift cards, and FedEx documents with communications between appellant and the person that allegedly committed the scam against her.

## C.    *The basis for the restitution order*

The Probation Officer's Report for Felony Presentencing made an assessment indicating "the defendant used her elderly mother['s] credit cards for personal use, took out a home loan on her mother['s] residence, and stole her medication and jewelry. [¶] . . . She knowingly and repeatedly victimized her elderly mother[,] and it does not appear this was the first time she ha[d] stolen from her."

In August 2019, a Restitution Request Form was signed by the victim and submitted to the Napa County District Attorney's Office, requesting restitution in the amount of $163,134.03. An updated filing by grandson indicated that after working with the District Attorney's Office, grandson was able to retrieve all the jewelry and silver that appellant had stolen from the victim. In addition, Bank of America agreed to overturn $39,600 in credit card charges. By this time, the victim had passed away, making

4

grandson the "derivative victim" who "had to pay off the remaining debt charges as well as the private loan in order to sell [victim's] residence." Consequently, there was still restitution owed to the grandson in the amount of $97,034.03.

In June 2020, the trial court sentenced appellant to three years of formal probation and 90 days in county jail.

### D. Appellant's petition to reduce her probation term

In January 2021, AB 1950 went into effect. AB 1950 amended section 1203.1 to limit the length of probation for most felony cases to two years. (§ 1203.1, subd. (a), as amended by Stats. 2020, ch. 328, § 2.) Exempt from these limits are offenses that include "specific probation lengths within [their] provisions." (§ 1203.1, subd. (l)(1).)

In March 2021, appellant filed a petition pursuant to AB 1950 (petition), where she asked the trial court to modify her probationary term from three to two years as set forth in amended section 1203.1, subdivision (a).

In May 2021, following a contested hearing, the trial court denied appellant's petition, stating "the Court is going to deny the motion to modify probation. I'm simply finding that the victim in this case falls within the definition under [Family Code section] 6211. Therefore, [Penal Code section] 1203[.]097 would apply." The appellant subsequently filed a timely notice of appeal.

5

## II.    DISCUSSION

Appellant argues the amendments to section 1203.1 made pursuant to AB 1950 should be applied retroactively to her case. She further contends that, since the crime she was convicted of (§ 368, subd. (d)) did not specify a probation length within its provisions, her probation must be reduced from three to two years. Since appellant's claim relies entirely on section 1203.1, we must first address whether the amendments AB 1950 made to section 1203.1 were meant to be applied retroactively. (§ 1203.1, as amended by Stats. 2020, ch. 328, § 2.)

### A. AB 1950 applies retroactively

The appellant argues, and respondent does not dispute, that AB 1950's modifications to section 1203.1 apply retroactively to appellant's case. (*People v. Quinn* (2021) 59 Cal.App.5th 874, 879–885; *People v. Sims* (2021) 59 Cal.App.5th 943, 955–964.) We agree.

The parties disagree, however, whether the statute which appellant was convicted of violating (§ 368, subd. (d)), qualifies as an exception to the general rule limiting probation length in felony cases to two years.

### B. "Specific probation lengths" exception to AB 1950

Section 1203.1, subdivision (l) provides several exceptions to the general rule that limits probation in most felony convictions to two years. Applicable here is the exception made for an offense that "includes specific probation lengths within its provisions." (§ 1203.1, subd. (l)(1).)

6

Appellant contends the statute under which she was convicted, section 368, subdivision (d), does not contain a " 'specific probation length[] within its provisions,' " and thus the exception does not apply and her probation term must be reduced from three to two years. Appellant is incorrect. Although section 368, subdivision (d) does not itself state a probation length, it operates in tandem with the sentencing statute of section 1203.097, which requires a three-year probation term when the crime has been committed against certain victims. Under established precedent, this satisfies the section 1203.1, subdivision (1)(l) exception.

Our colleagues in Division Four confronted a similar situation in *People v. Rodriguez* (2022) 79 Cal.App.5th 637 (*Rodriguez*). Pursuant to a negotiated plea, Rodriguez was convicted of assaulting his girlfriend with force likely to produce great bodily injury, a violation of section 245, subdivision (a)(4). (*Rodriguez, supra,* at p. 640.)

Rodriguez, who was placed on three years' formal probation, later contended his probation term should be reduced to two years pursuant to AB 1950 because Penal Code section 245, subdivision (a)(4) (like Penal Code section 368, subdivision (d) here) does not contain a specific probation length within its provisions. Our colleagues determined that Rodriguez's conduct fell within Penal Code section 1203.097, which specifies that if a person is granted probation for a crime in which the victim is a person as defined in Family Code section 6211, probation must be for a minimum of 36 months. (*Rodriguez, supra,* 79 Cal.App.5th

at p. 644; Pen. Code, § 1203.097, subd. (a)(1).) The court observed that the fact Penal Code section 245, subdivision (a)(4) did not include a specific probation length was "not material," observing that "the Penal Code often separates the punishment provisions from the crime." (*Rodriguez, supra,* at p. 644.) As a result, "a penal statute that works in tandem with a separate sentencing statute—separate in form, but not in function—is exempt from [AB 1950's] probation limits." (*Ibid.*) Since Rodriguez's offense qualified as a "domestic violence offense" under Penal Code section 1203.097, he was not entitled to have his probation term reduced from three to two years. (*Ibid.*)

We fully concur with our colleagues' reasoning in *Rodriguez.* We next address whether, as in *Rodriguez,* appellant's conduct as described in the summary report[5] qualifies as domestic violence under section 1203.097, thereby mandating a minimum 36-month term of probation.

## C. *Applicability of section 1203.097 minimum probation term*

As previously mentioned, the trial court denied the petition because it found the victim qualified as a "victim" within the

---

[5] As previously mentioned, appellant and her counsel stipulated that the summary report established a factual basis for her plea. In addition, appellant agreed to a *Harvey* waiver entitling the court to consider her entire criminal history including any unfiled or dismissed charges, for example conditionally dismissed count 1 (grand theft; § 487, subd. (a)) and count 3 (identity theft; § 530.5, subd. (a)). (*People v. Goulart* (1990) 224 Cal.App.3d 71, 80; *People v. Martin* (2010) 51 Cal.4th 75, 77 [*Harvey* waivers applicable to probation conditions].)

definition of Family Code section 6211, making Penal Code section 1203.097 applicable.  Penal Code section 1203.097, subdivision (a) states that "[i]f a person is granted probation for a crime in which the victim is a person defined in Section 6211 of the Family Code, the terms of probation *shall include . . .* [¶] . . . [*a*] *minimum period of probation of 36 months*, which may include a period of summary probation as appropriate."  (Italics added.)  With this finding, the "specific probation lengths" exception (Pen. Code, § 1203.1, subd. (l)(1)) applied.  (*Rodriguez, supra*, 79 Cal.App.5th at p. 644.)

The question comes down to whether the court erred in finding that the victim was a person described in Family Code section 6211.  Family Code section 6211 refers to "*abuse* perpetrated against" a list of persons including, in subdivision (f), "[a]ny . . . person related by *consanguinity* or affinity within the second degree."  (Italics added.)  There is no dispute that the consanguinity requirement was met here, because the victim was appellant's mother.

The term "abuse" as used in Family Code section 6211 is defined in Family Code section 6203, subdivision (a)(4) as including "any behavior that has been or could be enjoined pursuant to Section 6320."  Such abuse is not limited to the infliction of physical injury or assault.  (Fam. Code, § 6203, subd. (b).)  Under Family Code section 6320, subdivision (a), a "court may issue an ex parte order enjoining a party from . . . *impersonating as described in Section 528.5 of the Penal Code*

9

[and] *falsely personating as described in Section 529 of the Penal Code.*" (Italics added.)

Appellant contends that she did not "abuse" her mother as defined in Family Code section 6320 because she was not convicted of a violation of Penal Code section 528.5 (impersonation of person on Internet Web site or by other electronic means) or Penal Code section 529 (false personation of another). However, an injunction under Family Code section 6320 does not require a "conviction" under Penal Code sections 528.5 or 529—only behavior that is "described in" those sections. (Fam. Code, § 6320, subd. (a).)

Substantial evidence supports the conclusion that appellant's behavior constituted "falsely personating as described in" Penal Code section 529.

Section 529, subdivision (a)(3) prohibits a person from falsely personating another "and in that assumed character" does an act which, "if done by the person falsely personated" might make that person "become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating."

Appellant's conduct as set out in the summary report easily qualifies as conduct proscribed by section 529. Appellant "falsely personat[ed]" her mother, and, as her mother, performed acts that, if performed by her mother, would have exposed her to incur debt. In 2018, appellant made numerous unauthorized charges to the victim's bank account for nearly $40,000. Against

10

her mother's instructions, she kept open mother's credit cards and "maxed" some of them out. She took out a $55,000 loan on the mother's home by signing documents without her mother's consent.

Considering appellant's conduct, the trial court acted well within its discretion by denying appellant's petition to reduce her probation from three to two years.[6] In light of our conclusion, we need not address whether her conduct was also "as described" in section 528.5.

Ironically, appellant was also charged with a violation of section 487, subdivision (a), grand theft, which was conditionally dismissed with a *Harvey* waiver. It is not lost on us that one of the exceptions to the two-year felony probation rule established by AB 1950 is a felony conviction for violating section 487, subdivision (b)(3), which includes grand theft committed by an agent where the total value of the property taken exceeds $25,000. (§ 1203.1, subd. (l)(2).) Appellant's thefts from the

---

[6] We do not find appellant's argument to be persuasive that her conduct is not the type of conduct that the Legislature had in mind when amending Family Code section 6320. First, Family Code section 6320, subdivision (a), on its face, is not ambiguous. There is no qualification placed on the trial court's ability to enjoin behavior "as described" in Penal Code sections 528.5 or 529. Even if we were to assume that the Legislature was motivated, in part, to amend Family Code section 6320 due to theft committed on the internet, as appellant contends, this does not mean it intended to exclude conduct like that of appellant. This is especially true based on the Legislature's express intent stated in Penal Code section 368, subdivision (a), finding that elders (like the victim) deserve special consideration and protection.

11

victim were much greater than the $25,000 floor amount set by section 1203.1, subdivision (l)(2) as an exception to the felony two-year probation rule.  In light of our analysis and the sheer size of the theft committed by appellant, we are confident that appellant's conduct fits well within behavior the legislature intended to except from section 1203.1, subdivision (a).

**<u>DISPOSITION</u>**

The judgment is affirmed.

_____

WISEMAN, .J. *

We concur.

_____

JACKSON, P.J.

_____

SIMONS, J.

*People v. Markham* / A162600

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.