Filed 4/5/23  P. v. Jaramillo CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B318189 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA087356) |
| v. | |
| MANUEL LOUIS JARAMILLO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivan and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Manuel Jaramillo appeals from the superior court's denial of his petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95).[1]  Appellant contends his convictions for murder and attempted murder must be reversed because his jury was instructed on the kill zone theory, did not specifically find that he was the actual killer, and may have convicted him as an aider and abettor.  He requests that we treat his opening brief as a writ petition and reach his kill zone arguments despite his failure to present them below.  We deny the request and affirm the order of the superior court.

BACKGROUND

## I.    Conviction and Direct Appeal

An information filed in September 2006 charged appellant with one count of murder (Pen. Code, § 187, subd. (a))[2] and four counts of attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a), 664) stemming from a 2004 shooting incident at a tattoo parlor.[3]  The information alleged the crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)), and that a principal personally and

---

[1]    Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute.  We hereafter refer to the statute as section 1172.6.

[2]    All further statutory references are to the Penal Code unless otherwise indicated.

[3]    At appellant's unopposed request, we took judicial notice of the appellate record from appellant's direct appeal, Case No. B210249.

2

intentionally discharged a firearm and proximately caused great bodily injury and death (§ 12022.53, subds. (b)-(e)(1)).

Appellant proceeded to jury trial in 2008. The trial court instructed appellant's jury with modified CALJIC pattern instructions on aiding and abetting principles (CALJIC Nos. 3.01, 3.03), attempted murder (CALJIC No. 8.66), and the kill zone theory of concurrent intent (CALJIC No. 8.66.1). The court did not instruct the jury on the natural and probable consequences or felony murder doctrines.

During closing argument, the prosecutor asserted, in accordance with the jury instructions, that aiders and abettors act "with knowledge of criminal purpose, and with the intent to assist the crime in question." He argued that appellant was either the actual killer or a direct aider and abettor, and was guilty of murder and attempted murder under either theory. The prosecutor said several times that it "doesn't matter" whether appellant was the actual shooter, though he contended appellant was. The prosecutor briefly mentioned the kill zone theory, as "[a]nother way to consider attempted murder."

The jury found appellant guilty of second degree murder and all four counts of attempted murder. The jury found all gang and firearm enhancements true, but found untrue the allegations that the attempted murders were willful, deliberate, and premeditated. The trial court sentenced appellant to 15 years to life on the murder count, plus 25 years to life for the related firearm enhancement. It imposed concurrent sentences of seven years plus 25 years to life for each of the attempted murder counts and related firearm enhancements.

On direct appeal, we rejected appellant's contentions that the evidence was insufficient to support his convictions and his

3

trial counsel rendered ineffective assistance by failing to object to the kill zone instruction or the prosecutor's argument relating thereto. Citing "the motive for the shooting, the layout of the location of the shooting, the rapid fire, and the number of shots fired," we concluded that "the jury reasonably found that appellant had the specific intent to kill everyone in the parlor." (*People v. Jaramillo* (Feb. 22, 2010, No. B210249) [nonpub. opn.].) We further held that the kill zone instruction "was appropriate, [such that] appellant's trial counsel had no cause to object," and the prosecutor "correctly informed the jury that 'the nature of [appellant's] attack [was] such that it [was] reasonable to infer that [he] intended to kill everyone in a particular location as the means to some other end, e.g., killing some particular person.'" (*Ibid.*)

We alternatively concluded that appellant could not establish prejudice due to his counsel's failure to object to the prosecutor's argument, because the "record makes clear that the jury either did not remember or understand the gist of the prosecutor's argument on the subject." Specifically, the jury asked the court if it could "'have the closing statement of the prosecutor read back to us so that we can have an easier understanding of what the law says,'" and the court responded, "'Argument of counsel is not evidence. The law is contained in the jury instructions which you have.'" (*Ibid.*) We affirmed appellant's convictions but modified the judgment to correct the number of custody credits to which appellant was entitled. (See *id.*)

II. **Section 1172.6 Proceedings**

On April 2, 2019, appellant, in propria persona, filed a petition for resentencing under section 1172.6. In his non-

4

standardized petition, appellant expressed remorse and regret for
"what has happened" and asserted he could no longer be
convicted of murder[4] under recent changes to the law.  He further
asked the court to strike the firearm enhancements and appoint
counsel to assist him with his petition.

   On May 16, 2019, the prosecution filed an opposition to
appellant's petition, arguing that section 1172.6 was
unconstitutional.  On May 20, 2019, the superior court referred
the matter to the public defender's office.  On July 19, 2019, the
court appointed a bar panel attorney to represent appellant.  The
matter subsequently was continued.

   On January 6, 2020, the prosecution filed a substantive
opposition to appellant's petition.  It contended appellant was
ineligible for relief because the record, consisting of "the court
minutes, the opinion of the court of appeals, the trial transcript,
and the jury instructions," showed appellant was not convicted
under the felony murder or natural and probable consequences
doctrines.

   Appellant's counsel filed a reply in support of the petition
on August 11, 2020.  He acknowledged that the "only
theories/questions presented to the jury were that
Petitioner/Defendant was either a shooter, or an 'aider and
abettor' to a murder," and the jury was not instructed on the

---

[4]    At the time, section 1172.6 did not mention attempted
murder.  (See former § 1170.95, subd. (a).) While appellant's
petition was pending, the Legislature amended the statute to
expressly include attempted murder convictions.  (Sen. Bill No.
775 (2021-2022 Reg. Sess.), Stats. 2021, ch. 551, § 2.)  Appellant's
counsel recognized the amendment in his briefing below, and the
parties address appellant's convictions for attempted murder in
their appellate briefing.

felony murder or natural and probable consequences doctrines. He contended appellant nevertheless was eligible for relief because the jury did not specifically find that he harbored an intent to kill. Citing *People v. Ramirez* (2019) 41 Cal.App.5th 923 (*Ramirez*), he asserted that the absence of such a finding, or one that appellant was a major participant in the crimes, required immediate resentencing. He did not mention the kill zone instruction or *People v. Canizales* (2019) 7 Cal.5th 591 (*Canizales*), which clarified the limited circumstances in which the instruction properly may be given.

On September 28, 2020, the prosecution filed a supplemental response to appellant's reply. It argued *Ramirez* was inapposite and reiterated its contention that appellant was ineligible for relief due to the lack of instructions on either the felony murder or natural and probable consequences doctrine.

After several continuances, appellant's counsel filed a supplemental reply in support of the petition on December 2, 2021. He again acknowledged that the jury was only instructed on direct and aiding and abetting liability, but disputed the prosecution's assertion that the jury thus necessarily found appellant was either the shooter or an aider and abettor; he emphasized that "no separate verdict form" contained such findings. Appellant's counsel also asserted that the testimony of the gang expert "was for the exact, and only, purpose of allowing a 'natural and probable consequences theory' argument regarding inferences to drawn [*sic*] from the evidence," despite the lack of instruction, and that the prosecutor argued the theory. He did not mention the kill zone instruction or *Canizales*.

The superior court heard the petition on January 26, 2022. At the outset, the court indicated it was inclined to deny the

6

petition based on the lack of instructions on the felony murder and natural and probable consequences doctrines. Appellant's counsel argued that instructions were not necessary for the jury to have relied on those theories. The prosecutor submitted on the tentative. The court stated that the natural and probable consequences doctrine had not been argued, and concluded that appellant failed to make a prima facie case for relief "for the reasons that we've discussed."

Appellant timely appealed.

## DISCUSSION

Appellant argues for the first time on appeal that his attempted murder convictions rest upon the kill zone theory and must be reversed as legally unsound under *Canizales*, *supra*, 7 Cal.5th 591. He urges this court to "treat the appeal as a habeas corpus petition, and address this issue on the merits because it is cognizable on habeas corpus and there is no material dispute as to the facts." In the alternative, appellant contends the superior court erred in denying his petition because the kill zone instruction enabled the jury to convict him on an implied malice theory akin to the natural and probable consequences theory, and the record of conviction does not negate the possibility that his convictions are legally impermissible.

## I. We Do Not Treat the Appeal as a Habeas Petition.

Implicitly conceding that it would be improper to reach the merits of his belatedly raised kill zone argument in this appeal, appellant asserts we "can reach the merits of appellant's claim if this appeal 'is treated as a petition for writ of habeas corpus. . . .'" He contends we should construe his appeal as a habeas petition because his *Canizales* claim is cognizable and timely, "there is no material dispute as to the facts relating to his conviction," and

7

addressing his claims would promote judicial economy. We decline to exercise our discretion in favor of treating the instant appeal as a petition for writ of habeas corpus.

"[U]nder unusual circumstances, and . . . where doing so would serve the interests of judicial economy, an appellate court may use its discretion to construe an appeal as a petition for writ of mandate." (*Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 92 (*Mon Chong*); see also *People v. Segura* (2008) 44 Cal.4th 921, 928 fn. 4 (*Segura*).) Unusual circumstances include instances in which failing to treat an appeal as a writ petition would leave the appellant without an adequate appellate remedy to challenge an order, those in which the "issue is a matter of concern to many persons other than defendant," and those in which the matter presents a question of first impression. (*Segura, supra*, 44 Cal.4th at p. 928 fn. 4; *Mon Chong, supra*, 218 Cal.App.4th at p. 92.)

Here, appellant has an adequate appellate remedy: an order denying relief under section 1172.6 is appealable under section 1237, subdivision (b) as an order after judgment affecting a party's substantial rights. (See *Teal v. Superior Court* (2014) 60 Cal.4th 595, 598, 601.) This is not a "barred appeal" that appellate courts may treat as a petition for writ of habeas corpus to avoid injustice to the appellant. (*People v. Jerome* (1984) 160 Cal.App.3d 1087, 1095.) Section 1172.6 "does not diminish or abrogate any rights or remedies otherwise available to the petitioner." (§ 1172.6, subd. (f).)

Appellant suggests both that the *Canizales* issues he seeks to raise present novel questions of first impression and that "established precedent" mandates reversal of his attempted murder convictions. Under either scenario, construing this

8

appeal from an appealable order as a writ petition is not necessary.  Indeed, in a case presenting what appellant characterizes as "a procedural scenario similar to the one presented here," counsel appointed to represent the appellant in a section 1172.6 appeal filed a separate petition for writ of habeas corpus to advance the appellant's *Canizales* arguments.  (See *In re Sambrano* (2022) 79 Cal.App.5th 724, 729-730.)  It is unclear why such a petition was not filed here, either by appellant in propria persona or by counsel on his behalf.

Moreover, even if we were inclined to consider the appeal as a habeas corpus petition, "[i]t has long been the law in California that, while a Court of Appeal may have original jurisdiction in a habeas corpus proceeding, it has the discretion to deny a petition without prejudice if it has not been first presented to the trial court."  (See *In re Kler* (2010) 188 Cal.App.4th 1399, 1403; see also *Robinson v. Lewis* (2020) 9 Cal.5th 883, 895.)  "Petitioners should first file a petition for a writ of habeas corpus challenging a judgment in the superior court that rendered the judgment.  If the superior court denies the petition, the petitioner may then file a new petition in the Court of Appeal.  The superior court that rendered the judgment is best equipped to consider the claim in the first instance, to hold an evidentiary hearing when necessary, and to grant relief if appropriate."  (*Robinson v. Lewis*, *supra*, 9 Cal.5th at p. 895.)  Aside from emphasizing the importance of "judicial economy," appellant offers no explanation as to why it would be appropriate to deviate from this norm here.  The interest of judicial economy does not outweigh the benefits of permitting the superior court the opportunity to consider appellant's arguments (and respondent's oppositions thereto) in the first instance.  Appellant may raise his *Canizales* arguments

9

via a habeas petition in the superior court; we decline to consider them here.

## II. The Superior Court Properly Denied the Section 1172.6 Petition.

As an alternative to his primary *Canizales* arguments, appellant contends he is entitled to an evidentiary hearing on the attempted murder convictions because "the kill zone instructions established a prima facie case for relief" and "the prosecutor essentially argued for conviction under the natural and probable consequences doctrine." With respect to the murder conviction, he contends he is entitled to an evidentiary hearing because the jury did not expressly find that he was the actual killer. We disagree under any standard of review.

Section 1172.6, subdivision (a) authorizes resentencing of persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" where certain conditions are met. Among those conditions are the filing of an information that "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a)(1).)

By its plain language, the statute twice provides that a person convicted of attempted murder may be eligible for relief only where he or she could be or was convicted "under the natural and probable consequences doctrine." Appellant conceded both

10

here and below that his jury "was not instructed on felony murder or the natural and probable consequences doctrine." He thus could not have been convicted of attempted murder under such a theory and therefore is ineligible for relief under section 1172.6 on his attempted murder convictions. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Regardless of what the prosecutor argued, the jury had no basis to convict appellant of attempted murder under the natural and probable consequences doctrine. Indeed, as we noted in our prior opinion, the record shows that the trial court expressly instructed the jury that "'Argument of counsel is not evidence. The law is contained in the jury instructions which you have.'" (*People v. Jaramillo* (Feb. 22, 2010, No. B210249) [nonpub. opn.].) We presume the jury followed the court's instructions and did not convict appellant on theories potentially only asserted during the prosecutor's argument. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.)

Appellant's reliance on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) is misplaced. In *Langi*, the defendant was convicted of second degree murder in connection with the beating death of a robbery victim; the victim fell and struck his head after someone in a group that included the defendant punched him. (See *Langi, supra*, 73 Cal.App.5th at p. 975.) The superior court summarily denied the defendant's petition after concluding he was the actual killer based on language in the direct appellate opinion suggesting that the defendant threw the fatal punch. (*Id.* at p. 975.) The court of appeal reversed. It first held that the prior opinion, when "[r]ead with the caution

11

dictated by [*People v.*] *Lewis* [(2021) 11 Cal.5th 952],"[5] failed to "conclusively establish that [the defendant] was convicted as the actual killer." (*Langi*, *supra*, 73 Cal.App.5th at p. 980.)

The court then considered whether the jury could have found the defendant guilty of murder as an aider and abettor, and, if so, whether it could have done so under either the natural and probable consequences theory or "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (*Langi*, at p. 980.) The court noted that the jury was not instructed on the natural and probable consequences theory; it therefore examined whether the instructions given were such that the jury could find him guilty on a theory under which malice was imputed to him based solely on his participation in the crime. (*Ibid.*)

The defendant argued, and the appellate court agreed, that the instructions permitted the jury to find him guilty of murder based on his codefendant's act regardless of his personal knowledge or disregard of danger to human life. (*Langi*, *supra*, 73 Cal.App.5th at p. 981.) Specifically, the court concluded that the aiding and abetting instruction (CALJIC No. 3.01) and the second degree murder instruction (CALJIC No. 8.31) as given permitted the jury "to conclude that, to be guilty as an aider and abettor of second degree murder, [the defendant] need only have

---

[5] In *People v. Lewis*, the Supreme Court held that appellate opinions may be considered in determining whether a prima facie showing for relief has been made under section 1172.6, but may not be conclusive. Superior courts are not permitted to engage in any fact-finding involving the weighing of evidence or the exercise of discretion at the prima facie stage of review. (See *People v. Lewis*, *supra*, 11 Cal.5th at pp. 971-972; see also *Langi*, *supra*, 73 Cal.App.5th at pp. 979-980.)

intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not [the defendant] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id.* at p. 983.) The court emphasized that the instructions "should have explained that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice." (*Ibid.*) Because they did not, the record of conviction did not "conclusively negate" the possibility that the defendant was convicted on an invalid theory, and an evidentiary hearing was required under section 1172.6. (*Langi,* at p. 984.)

*Langi* is obviously inapplicable to the extent appellant relies upon it to support his contention that he is entitled to an evidentiary hearing on his attempted murder convictions. It did not address attempted murder, and the only instruction appellant identifies as "legally incorrect" or otherwise ambiguous is the kill zone instruction, which pertains only to attempted murder. More fundamentally, as explained above, attempted murder convictions are eligible for relief only when a jury is instructed on the natural and probable consequences doctrine.

*Langi* also forms the basis of appellant's argument regarding his murder conviction. He contends *Langi* "is on point" because "the jury convicted appellant of second-degree murder but did not find he was the actual killer." He asserts, quoting *Langi*, *supra*, 73 Cal.App.5th at p. 984, that absent an express finding by the jury that he was the actual killer, "the record of conviction *does not conclusively negate* the possibility that the jury found [him] guilty of second degree murder by imputing to him the implied malice of the actual killer, without finding that

13

he personally acted 'with knowledge of the danger to, and with conscious disregard for, human life.'" We disagree.

Langi is analogous only to the extent that appellant, like the defendant there, may have been convicted either as the actual killer or as an aider and abettor. That fact alone does not entitle him to relief, however, as "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder."[6] (*People v. Gentile, supra,* 10 Cal.5th at p. 848.) Appellant makes no further argument explaining how or why it was possible on the instructions given for the jury to convict him as an aider and abettor under an imputed malice theory. Nor does he mention that the instructions given in his case materially differed from the ones in *Langi*: appellant's jury was not instructed with CALJIC No. 8.31. Instead, appellant's jury was instructed with a modified version of CALJIC No. 8.11 ("'Malice Aforethought'—Defined") that omitted optional language defining implied malice. Appellant's jury thus was instructed only on express malice, which the instruction defined as a "manifested . . . intention unlawfully to kill a human being." The jury accordingly could not have convicted appellant under an imputed or implied malice aiding and abetting theory. The only possibilities presented to the jury were that appellant was the actual killer or he was an aider and abettor who harbored express malice. Both theories

---

[6]     Senate Bill 1437 was the legislation that "modified the requirement of malice aforethought for purposes of murder" such that "personally possessing malice aforethought [became] a necessary element of murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 846.) It also added section 1172.6 to the Penal Code. (*Id.* at p. 847.)

14

remain valid under current law.  The superior court did not err in denying the petition.

## DISPOSITION

The order of the superior court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, ACTING, P.J.

DAUM, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.